[No. 46188.   En Banc.   July 26, 1979.]

RICHARD DAWSON, *Appellant,* v. HEARING COMMITTEE, WASHINGTON STATE PENITENTIARY, *Respondent.*

392

*Dan Stormer, Iro Richard Lassman,* and *John Midgley,* for appellant.

*Slade Gorton, Attorney General,* and *Nate D. Mannakee, Assistant,* for respondent.

HOROWITZ, J.—The sole issue raised by this appeal is whether disciplinary hearings in our state prisons are subject to judicial review under the administrative procedures act RCW 34.04 adopted in 1959. We hold such hearings lie outside the scope and intent of the APA, and are therefore not subject to its provisions.

Appellant Danny Brooks came before the Disciplinary Hearing Committee at the Washington State Penitentiary, where he is a resident inmate, on charges of possessing knives, marijuana, and a large amount of cash. The Hearing Committee found him guilty and imposed as a sanction 30 days in segregation, plus referral to administrative segregation under WAC 275–82. The Superintendent denied the ensuing appeal.

Appellant then filed a petition for judicial review of the Committee's action in the Superior Court for Walla Walla

County, alleging jurisdiction under the administrative procedures act, the APA. His case was consolidated with three similar actions, including that of Richard Dawson, for consideration by that court.

Upon motion by respondent Hearing Committee, the trial court dismissed the actions for lack of subject matter jurisdiction, finding that prison disciplinary hearings do not fall within the provisions of the APA and further that the APA, if applied to such hearings, would unduly inhibit prison management. An appeal was filed in the Court of Appeals, Division Three, by petitioner Dawson, and appellant Danny Brooks later joined in that appeal as permitted by order of the Commissioner of the Court of Appeals. Petitioner Dawson was subsequently dismissed from the appeal on his own motion when it appeared his appeal was moot. The case of the remaining appellant, Danny Brooks, was certified to this court sub nom. Richard Dawson v. Hearing Committee for determination of the question whether the APA applies to prison disciplinary hearings. We affirm the dismissal below for lack of subject matter jurisdiction.

In 1973 the Division of Adult Corrections of the Department of Social and Health Services promulgated regulations governing discipline in adult correctional institutions, and creating a committee to conduct hearings on certain alleged violations. WAC 275–88. The expressed purpose of these regulations is to "provide a standardized system consistent with constitutional due process for ascertaining whether misconduct by a resident of an adult correctional institution has occurred." WAC 275–88–005. The Committee, which is composed of three persons and must reflect a balance between the various departments of the institution, has jurisdiction over all serious infractions, all general infractions referred to it by supervisory authorities, and questions regarding whether a resident has maintained a record of conduct entitling him or her to certification of good time. WAC 275–88–070.

The regulations provide that a resident coming before the Hearing Committee must be given a copy of the infraction report at least 24 hours before the hearing, and must be informed of his rights to remain silent, to call and question witnesses under certain circumstances, to present evidence on his own behalf, to have a lay advisor, and to have access to nonsensitive reports and records used by the Committee. The hearing must be held within 5 working days of the discovery of the incident, or within 5 working days of the determination that a hearing is necessary, unless an extension of time is granted by the Superintendent. A resident may make a tape of the proceedings on his own equipment.

The resident is informed personally of the decisions of the Committee regarding guilt or innocence and further action to be taken. If the resident is found guilty, a written report of the hearing is placed in his file and he is informed of his right to appeal to the Superintendent of the institution by filing a written request for review within 24 hours. The Superintendent must then act on the request within 5 days, and may affirm, reduce the severity of the sanctions imposed, or remand for a new hearing. The resident must be promptly notified of the Superintendent's decision.

It is appellant's contention that these proceedings are governed by the APA, and that judicial review of the Hearing Committee's action is now available under that act. The APA provides judicial review of agency action in all "contested cases." RCW 34.04.130. A contested case is defined by the act:

> "Contested case" means a proceeding before an agency in which an opportunity for a hearing before such agency is required by law or constitutional right prior or subsequent to the determination by the agency of the legal rights, duties, or privileges of specific parties.

RCW 34.04.010(3). It is appellant's argument that a prison disciplinary hearing is a proceeding before an agency (the Adult Corrections Division of the Department of Social and

Health Services) which is required by both law and constitutional right, and thus meets the definition of a contested case. Furthermore, appellant argues, such hearings are not specifically excluded from the operation of the act by RCW 34.04.150, a provision which lists a series of exemptions and states that "[a]ll other agencies . . . shall be subject to the entire act." The conclusion therefore urged before this court is that prison disciplinary hearings are within the language of the APA and that the provision for judicial review under RCW 34.04.130 must apply. We do not agree.

■■ Consideration of the unique nature of prison disciplinary matters which require prompt, sure, and fair resolution, as contrasted to the formal, time–consuming and adversarial procedures required by the APA, leads inexorably to the conclusion that prison disciplinary proceedings are outside the scope and intent of the act. This conclusion is supported by the available history of the legislature's consideration of the proposed APA prior to its enactment, which suggests the legislature was aware of the problems of prison discipline and intended that the act would not apply to disciplinary proceedings. These points are discussed in turn below.

### I. Scope and Intent of the APA

Where a particular administrative proceeding not specifically exempted from the operation of the APA nonetheless clearly lies outside the scope and intent of the act, the provisions of the act will not apply. *See for example Olson v. University of Wash.*, 89 Wn.2d 558, 573 P.2d 1308 (1978). That is the case here. The rigid, formal and time–consuming procedures created by the APA are clearly not designed to deal with the unique problems of enforcing disciplinary rules within a prison. *See Clardy v. Levi*, 545 F.2d 1241 (9th Cir. 1976). In light of the nature of the prison setting and the needs of prison administrators to determine discipline matters fairly and swiftly, while preserving calm and

order within the institution, it is apparent that the procedures of the APA are wholly inappropriate to prison disciplinary matters.

The reasons for which APA procedures are not appropriate stem from the unique needs and objectives of penal institutions and the limited scope of due process rights to which a prison resident is entitled. In *Wolff v. McDonald,* 418 U.S. 539, 560–67, 41 L. Ed. 2d 935, 94 S. Ct. 2963 (1974), the United States Supreme Court discussed both the unique nature of prison disciplinary proceedings and the scope of due process rights which apply. As noted by the Court, a prison is a tightly controlled environment populated by persons who have chosen to violate the criminal law, many of whom have employed violence to achieve their ends. Tension between guards and residents is "unremitting"; "[f]rustration, resentment, and despair are commonplace." *Wolff v. McDonald, supra* at 562.

In this setting disciplinary hearings must be conducted in such a way as to minimize the danger of heated confrontation, while preserving the due process rights to which the resident is entitled.

> The reality is that disciplinary hearings and the imposition of disagreeable sanctions necessarily involve confrontations between inmates and authority and between inmates who are being disciplined and those who would charge or furnish evidence against them. Retaliation is much more than a theoretical possibility; and the basic and unavoidable task of providing reasonable personal safety for guards and inmates may be at stake, to say nothing of the impact of disciplinary confrontations and the resulting escalation of personal antagonisms on the important aims of the correctional process.

*Wolff v. McDonald, supra* at 562. With regard to the due process rights which must be afforded prison residents in this setting, the court stated:

> Viewed in this light it is immediately apparent that one cannot automatically apply procedural rules designed for free citizens in an open society . . . to the very different

situation presented by a disciplinary proceeding in a state prison.

*Wolff v. McDonald, supra* at 560. The court concluded that a limited number of procedural safeguards must be afforded when a prison resident is subject to discipline for "serious misconduct" which may deprive him of a liberty interest. *See also Baxter v. Palmigiano,* 425 U.S. 308, 47 L. Ed. 2d 810, 96 S. Ct. 1551 (1976). In such cases a resident is constitutionally entitled to notice of the alleged violation, a written statement from the factfinder as to the evidence relied upon and the reason for any disciplinary action taken, and, where not unduly hazardous, a right to call witnesses and present documentary evidence. *Wolff v. McDonald, supra* at 563–66. Due process in such proceedings does not include the right of confrontation and cross-examination or, in most circumstances, the right to be represented by an attorney. *Wolff v. McDonald, supra* at 563–68. Confrontation and cross–examination in the prison context may indeed create a very real and physical danger to guards and residents alike.

We contrast to these aspects of hearings in the prison setting the formal and rigid procedures prescribed by the APA. While prison hearings must take place swiftly, in many cases no more than 5 days after an event giving rise to the charge, no hearing may take place under the APA without at least 20 days' notice. RCW 34.04.090. Such a delay could have a substantial adverse effect on the rehabilitative function of the sanction imposed. Second, while confrontation and cross–examination in the prison setting may create tensions which disrupt and endanger the functioning of the institution, under the APA all parties have the right of cross–examination. RCW 34.04.100. It is thus apparent that application of the APA to prison disciplinary hearings would tend to be counterproductive and disruptive of the institutions' goals.

Other features of the act also suggest it was not intended to apply in the prison discipline setting. Pursuant to the present regulations, written records of disciplinary hearings

documenting the essential aspects of the proceedings are filed and made available for review when a resident is found guilty. Under the APA, however, all oral proceedings must be transcribed. RCW 34.04.090(5). Although statistics more recent than 1977 were not available to this court at the time of oral argument, it may safely be estimated that more than 5,000 prison disciplinary hearings take place each year in Washington adult correction institutions. Transcribing the proceedings of each of these hearings would require an expenditure of time and funds which was neither intended nor provided for by the legislature when the APA was enacted. Moreover, while the prison resident now may seek review in state courts through the traditional writs of habeas corpus, certiorari, and mandamus, as well as personal restraint petitions under RAP 16.3, the APA specifies that its procedures for judicial review are exclusive, leaving no other avenue for review if the time for review of an administrative action has expired. RCW 34.04.130. We do not believe such a restriction on the traditional avenues of review open to all residents of state penal institutions was the intent of the APA. Indeed, the writ of habeas corpus is expressly protected by Const. art. 4, § 4 and could not be denied by legislative act.

In light of all these considerations, we find it quite clear that prison disciplinary hearings are not within the scope or intent of the administrative procedures act.

## II. INTENT OF THE LEGISLATURE

In 1958, when the Model State Administrative Procedure Act had been proposed for adoption by the Washington State Legislature, the State Attorney General, John J. O'Connell, published a discussion of the effect the model act would have on existing administrative procedures in Washington. J. O'Connell, *Effect of Adoption of the Model State Administrative Procedure Act on Existing Administrative Procedures in Washington,* 33 Wash. L. Rev. 17 (1958). The Attorney General discussed the strengths and

weaknesses of the model act, and made specific recommendations for exclusions from its application.

> It would be recommended, were such an act to be adopted, that such agencies as the Washington State Liquor Control Board, [and], the Washington State Board of Prison Terms and Paroles . . . be exempted from its application. In short, any agency performing functions going to the protection and preservation of public health, safety and morals should be excluded from the act, at least to the extent that their powers to act quickly and summarily would be curtailed.

J. O'Connell, *Effect of Adoption of the Model State Administrative Procedure Act on Existing Administrative Procedures in Washington, supra* at 22. When this state's version of the APA was adopted in 1959, all proceedings of the Board of Prison Terms and Paroles and the State Liquor Control Board were specifically exempted. Laws of 1959, ch. 234, § 15, p. 1088. We may infer from this fact that the Attorney General's recommendations were known to the members of the legislature and were well received by them. It appears the legislature agreed that where the public health and safety require that a power to act quickly not be curtailed, the administrative proceeding should be exempted from the operation of the APA. Hence the explicit exemption for all proceedings of the Board of Prison Terms and Paroles, which has continued into the present version of the act. RCW 34.04.150.

At the time the APA was enacted, and at the present time as well, the Board had original (although not exclusive) jurisdiction to review all infractions of rules and regulations of the state's penal institutions. RCW 9.95.080. *See also,* Laws of 1955, ch. 133, § 9, p. 580–81. Pursuant to that provision the Board may hold a hearing to determine whether its order setting the length of imprisonment shall be revoked, and a new prison term order, "[i]n case any convicted person undergoing sentence in the penitentiary, reformatory, or other state correctional institution, commits any infractions of the rules and regulations of the institution". These proceedings to protect the public health and

safety were surely in the contemplation of the legislature when it expressly exempted the Board from the operation of the APA, for they involve one of the major functions of the Board—setting and reviewing minimum terms of confinement.

The Board's proceedings to review infractions of prison rules have not been the sole disciplinary proceedings within the state prison system, however. The Board conducts such proceedings to determine whether the prison term of the resident should be lengthened. Other types of disciplinary measures have been imposed by internal institutional committees which are independent of the Board. Prior to 1973, each correctional institution had an Adjustment Committee which reviewed allegations of infractions and determined appropriate disciplinary measures pursuant to regulations promulgated by the Department of Institutions. *See* MO–Instruction 334.1A, Department of Institutions, March 1, 1965. In 1973 the Department of Social and Health Services, which assumed the functions of the Department of Institutions in 1970, promulgated the disciplinary procedures at issue here through the Division of Adult Corrections. The regulations governing these disciplinary determinations have provided a broad range of sanctions, from a warning or reprimand to a term of confinement in isolation. They have also provided for discretionary referral to the Board of Prison Terms and Paroles for reconsideration of the resident's minimum sentence. *See* WAC 275–88–105; MO–Instruction 334.1A(VI), *supra.* These internal institutional proceedings are not explicitly exempted from the operation of the APA in RCW 34.04.150.

The question is thus whether the legislature intended to exempt all prison disciplinary proceedings when it adopted the provisions of the APA, which included the exemption for proceedings before the Board of Prison Terms and Paroles. We conclude it must have intended that such proceedings would not be covered by the act. This conclusion is compelled by the apparent knowledge of the legislature at the time the APA was enacted that the functions of the

Board of Prison Terms and Paroles—which included disciplinary proceedings—were not suited to the strictures of the formal APA process. The members of the legislature were apparently aware of the Attorney General's recommendation that agencies whose functions were important to the public safety and welfare should not be subjected to the time–consuming requirements of the act. They apparently agreed with him that proceedings before the Board fulfilled such functions. Implicit in the legislative exemption of the Board is the recognition that a certain type of proceeding—for example, the prison disciplinary proceeding—is not well served by the APA. This holds true no matter which agency conducts the hearing.

The exemption from the APA of the Board of Prison Terms and Paroles confirms the conclusion reached in Part I of this opinion that the legislature did not intend that prison disciplinary proceedings be subject to the APA.

Affirmed.

UTTER, C.J., ROSELLINI, WRIGHT, BRACHTENBACH, DOLLIVER, HICKS, and WILLIAMS, JJ., and CHAN, J. Pro Tem., concur.