[No. 11640-5-II. Division Two. June 12, 1989.]

THE STATE OF WASHINGTON, *Respondent,* v. KENNETH TRADER, *Appellant.*

*Kevin B. McGoffin* and *McGoffin & McGoffin,* for appellant (appointed counsel for appeal).

*John W. Ladenburg, Prosecuting Attorney,* and *Chris Quinn–Brintnall, Deputy,* for respondent.

WORSWICK, J.—Kenneth Trader was charged with second degree assault in a stabbing incident. Because there were no eyewitnesses, the credibility of Trader and the victim was of special importance. The first trial resulted in a hung jury.

Before the second trial began, Trader submitted to a polygraph examination pursuant to an oral stipulation between defense counsel and the prosecutor. The polygraph examiner's testimony was introduced without objection. The examination results were adverse to Trader; he was convicted.

We find no merit in any of Trader's contentions on this appeal, and we choose to discuss only one: whether, pursuant to RAP 2.5(a)(3), Trader may raise for the first time on

appeal the contention that the polygraph results were inadmissible. We hold that he may not.

Trader asks us to reverse, contending here for the first time that the requirements for admission of polygraph evidence, set forth in *State v. Renfro,* 96 Wn.2d 902, 906–07, 639 P.2d 737, *cert. denied,* 459 U.S. 842, 74 L. Ed. 2d 86, 103 S. Ct. 94 (1982), were not satisfied.[1] Trader argues that *Renfro* was violated because there was no written stipulation, he did not join in the oral stipulation, and the court gave no cautionary instruction. Citing *State v. Pederson,* 44 Wn. App. 391, 722 P.2d 127, *review denied,* 107 Wn.2d 1005 (1986), the State argues that there was substantial compliance with *Renfro.* We do not agree with the State's position; *Pederson* is distinguishable. In *Pederson,* a written stipulation was prepared *by defense counsel* and signed by everyone *except defense counsel,* who admitted that his failure to sign was purely inadvertent. Here, there was no written stipulation at all, and Trader did not join in the

---

[1]*Renfro* provides in pertinent part:

"(1) That the [prosecuting] attorney, defendant and his counsel all sign a written stipulation providing for defendant's submission to the test and for the subsequent admission at trial of the graphs and the examiner's opinion thereon on behalf of either defendant or the state.

"(2) That notwithstanding the stipulation the admissibility of the test results is subject to the discretion of the trial judge, i.e. if the trial judge is not convinced that the examiner is qualified or that the test was conducted under proper conditions he may refuse to accept such evidence.

"(3) That if the graphs and examiner's opinion are offered in evidence the opposing party shall have the right to cross–examine the examiner respecting:

"a. the examiner's qualifications and training;

"b. the conditions under which the test was administered;

"c. the limitations of and possibilities for error in the technique of polygraphic interrogation; and

"d. at the discretion of the trial judge, any other matter deemed pertinent to the inquiry.

"(4) That if such evidence is admitted the trial judge should instruct the jury that the examiner's testimony does not tend to prove or disprove any element of the crime with which a defendant is charged but at most tends only to indicate that at the time of the examination defendant was not telling the truth. Further, the jury members should be instructed that it is for them to determine what corroborative weight and effect such testimony should be given." *Renfro,* 96 Wn.2d at 906–07.

oral stipulation.[2] We do not countenance such a departure from *Renfro* upon the excuse of substantial compliance. Thus, had a timely objection been interposed, the trial court would have erred in admitting the polygraph evidence.

Trader argues that his contention raises an issue of constitutional magnitude because of the effect he believes the polygraph evidence had on the outcome. His approach is incorrect. The first step in the assessment of alleged RAP 2.5(a)(3) constitutional error is to determine, independently of its effect, whether the error was truly of constitutional magnitude. Only after an affirmative determination is the claimed error reviewed and its effect considered. *State v. Scott,* 110 Wn.2d 682, 757 P.2d 492 (1988).

Trader cites no specific authority that polygraph evidence has a special status under the state or federal constitutions. This is not surprising; after exhaustive research, we find none. To the contrary, although the subject has received considerable attention, not one Washington case on the subject alludes to constitutional implications. Rather, the concern always has had to do with reliability,

---

[2]The entire stipulation is as follows:

"THE COURT: We're here for the trial of the matter of State of Washington versus Kenneth Edward Trader, and I understand counsel have a stipulation as to the polygraph to put on the record prior to calling the jury.

"MR. MOODY: That is correct, Your Honor. For the record, my name is Rod Moody and I'm a legal intern with the prosecutor's office, being supervised by Mr. Carl Hultman.

"Earlier this morning by prior agreement of both parties Kenneth Trader took a polygraph examination with a Tacoma Police deputy, and the stipulation was that prior to that that the polygraph examination would be admissible as evidence here at trial irregardless [*sic*] of the results. We do have results in the matter and, according to the type of hold and the three relevant questions which were asked relevant to the matter, it did show a strong deceptive trend to them and that would be his opinion, so we need to record prior to trial that this matter has taken place—excuse me—the test has taken place and the results will be testified to by Detective Holt, and as part of the State's case in chief during the trial.

"THE COURT: Mr. Dickenson, that was the stipulation?

"MR. DICKENSON: Yes, that is correct.

"THE COURT: And this is Mr. Trader here in court at this time?

"MR. DICKENSON: Yes."

the sine qua non of all evidence. *See Renfro,* 96 Wn.2d at 905–06; *State v. Grisby,* 97 Wn.2d 493, 502, 647 P.2d 6 (1982), *cert. denied,* 459 U.S. 1211, 75 L. Ed. 2d 446, 103 S. Ct. 1205 (1983); *State v. Descoteaux,* 94 Wn.2d 31, 38, 614 P.2d 179 (1980); *State v. Young,* 89 Wn.2d 613, 621, 574 P.2d 1171, *cert. denied,* 439 U.S. 870, 58 L. Ed. 2d 182, 99 S. Ct. 200 (1978); *State v. Young,* 87 Wn.2d 129, 131–32, 550 P.2d 1 (1976); *State v. Woo,* 84 Wn.2d 472, 474, 527 P.2d 271 (1974); *State v. Rowe,* 77 Wn.2d 955, 958, 468 P.2d 1000 (1970); *State v. Ahlfinger,* 50 Wn. App. 466, 468– 73, 749 P.2d 190, *review denied,* 110 Wn.2d 1035 (1988); *State v. Pleasant,* 21 Wn. App. 177, 184, 583 P.2d 680, *cert. denied,* 441 U.S. 935 (1978). Suggestions, appearing in earlier cases, that such evidence might be allowed by stipulation led to the decision in *State v. Ross,* 7 Wn. App. 62, 497 P.2d 1343, 53 A.L.R.3d 997, *review denied,* 81 Wn.2d 1003 (1972), which adopted the standards ultimately embraced in *Renfro.*

*Renfro* explained the rationale underlying the rule that this presumably unreliable type of evidence would nevertheless be admissible by stipulation. After pointing out that the reliability of polygraph evidence is not enhanced by a stipulation, the court said:

> When there is a stipulation as in this case, the prosecution and the defense, *knowing that the degree of reliability is open to question, in effect gamble that the test will prove favorable to them.* Under this circumstance and in this case, if the requirements listed below are met, *we will enforce a stipulation and admit the test.* The results of the polygraph examination are admitted not because the test is completely reliable, but rather because it is reliable enough to be relevant. *Both parties, each from a different perspective, believed the result of the polygraph examination would be relevant to the case and by their stipulation waived any question as to the degree of the reliability of the polygraph.*

(Citations omitted. Italics ours.) *Renfro,* 96 Wn.2d at 906. Two observations are appropriate here: (1) the *Renfro* court

recognized, and made provision for, the strategy of gambling on an agreement to admit polygraph evidence; and (2) the court announced the conditions under which, notwithstanding possible second thoughts, a party would not be allowed to escape his choice to gamble.

*State v. Pederson, supra,* affords an example both of an attempt to avoid the stipulation and the need for a timely presentation of that attempt in the trial court. Counsel objected at trial, thus allowing the trial court, and thereafter this court, to review compliance with the *Renfro* standards. This case affords the opposite example: no objection was made, Trader gambled on the verdict, lost, and then raised the issue here for the first time.

After reviewing the Washington cases, we are satisfied that the mere admission of polygraph evidence raises no more than standard evidence questions concerning which constitutional issues are not necessarily implicated. *Accord, Maglaya v. Buchkoe,* 515 F.2d 265 (6th Cir.), *cert. denied,* 423 U.S. 931 (1975). This is not to say that no evidence issue implicates a constitutional principle, for obviously this is not so. *See In re Lee,* 95 Wn.2d 357, 363, 623 P.2d 687 (1980). Nevertheless, an appellant cannot invoke RAP 2.5(a)(3) without identifying with at least some particularity the constitutional principle at issue. *State v. Scott, supra.* Trader has not done so, for he alludes in only the broadest terms to his "right to a fair trial" and his "right to remain silent" without pointing out in what respect these rights have been violated.

Going beyond this, however, and assuming that admission of polygraph evidence has the potential for violating constitutional rights, without agreeing that it did in this case, we are satisfied—and we hold—that they are within the category of rights that are waived if not asserted at trial.[3] This category was described well in *State v. Williams,* 30 Wn. App. 558, 636 P.2d 498 (1981), *rev'd on other*

---

[3]The State argues for application of the invited error principle. *See State v. Pam,* 101 Wn.2d 507, 680 P.2d 762 (1984). We prefer the waiver principle for, as

*grounds,* 98 Wn.2d 428, 656 P.2d 477 (1982) (*see State v. Smith,* 104 Wn.2d 497, 504, 707 P.2d 1306 (1985)). It was discussed again in *State v. Valladares,* 31 Wn. App. 63, 639 P.2d 813 (1982), *rev'd in part on other grounds,* 99 Wn.2d 663, 664 P.2d 508 (1983) (waiver principle affirmed). *See also State v. Stubsjoen,* 48 Wn. App. 139, 738 P.2d 306, *review denied,* 108 Wn.2d 1033 (1987); *State v. Rice,* 24 Wn. App. 562, 603 P.2d 835 (1979). The *Williams* court said:

> The fact that the admissibility of certain evidence may be tested by constitutional standards when objected to does not create a constitutional issue when no objection is interposed. An analogy may be drawn to those situations in which a defendant seeks to suppress evidence allegedly seized in violation of the Fourth Amendment. It is fundamental that an unlawful search and seizure contention must be the subject of a pretrial motion, *State v. Baxter,* 68 Wn.2d 416, 413 P.2d 638 (1966), and may not be raised for the first time on appeal despite such contentions' reliance on constitutional provisions. *State v. Woods,* 5 Wn. App. 399, 487 P.2d 624 (1971).

*Williams,* 30 Wn. App. at 565. In *Valladares,* we said:

> With these principles in mind we believe the propriety of invoking RAP 2.5(a)(3) in this case turns on whether a clear violation of due process resulted from the admission of evidence, without objection, that may have been obtained in violation of defendant's Fourth Amendment rights. It must be remembered that, historically, otherwise competent and relevant evidence, even though illegally or unconstitutionally obtained, is not thereby rendered inadmissible. There is no constitutional per se prohibition against its use, *i.e.,* the use itself violates no constitutional right. True, the exclusionary rule was devised by the courts to afford meaning to such rights. But the defendant must take advantage of the rule and affirmatively seek its protection.

*Valladares,* 31 Wn. App. at 76.

---

the cases demonstrate, where that principle applies there is no error, whereas invited error simply precludes reversal at the behest of the party extending the invitation.

The rationale of these opinions applies here. Any second thoughts Trader may have had concerning the polygraph evidence should have been presented for the trial court's review, not saved for an appeal that would follow a lost gamble on the verdict.

In a case involving civil rights violation claims against police officers for detaining and administering a polygraph examination to the plaintiff, the federal court said:

> We are firmly of the view that if Ware indeed consented to the entire transaction—detention, interrogation, and polygraph examination—then no constitutional interest was implicated.

*Ware v. Reed,* 709 F.2d 345, 350 (5th Cir. 1983). We hold the same view here. Trader consented to the polygraph test and admission of the results, and, gambling on the verdict, he did not apprise the court of any defects in the procedure. He thereby eliminated any basis he might otherwise have had to assert trial court error in the admission of those results.

Affirmed.

ALEXANDER, C.J., and REED, J., concur.

Reconsideration denied August 1, 1989.

Review denied at 113 Wn.2d 1027 (1989).