[No. 23435-8-I. Division One. March 19, 1990.]

*In the Matter of the Personal Restraint of*
NOEL E. PLUNKETT, *Petitioner.*

*Neil M. Fox* and *Helen A. Anderson* of *Washington Appellate Defender Association,* for petitioner.

*Kenneth O. Eikenberry, Attorney General,* and *Aaron Owada, Assistant,* for respondent.

COLEMAN, C.J.—Noel Plunkett seeks relief from personal restraint resulting from a prison disciplinary hearing in which Plunkett was found guilty of raping a fellow inmate. Plunkett contends that his due process rights were violated by holding the disciplinary hearing over the telephone and by using the victim's polygraph test results against him. We disagree.

At all times relevant to this petition, Plunkett has been a federal prisoner housed in Washington state facilities on a 15–year maximum bank robbery sentence. As of March 1986, Plunkett anticipated a federal presumptive parole date of August 25, 1986. His anticipation was thwarted, however, by a March 21, 1986, report by Plunkett's cellmate, Donald Krog, that Plunkett had anally raped him the previous night. Plunkett was subsequently charged with committing two serious infractions of institution rules, to wit: (1) WAC 137–28–030(504) which provides that it is a serious infraction to engage "in sexual acts with others,

with the exception of conjugal visits authorized by the superintendent;" and (2) WAC 137–28–030(507) which makes it a serious infraction to commit "an act not otherwise proscribed by these regulations which constitutes a felony or misdemeanor under state or federal law[.]"

On March 26, 1986, a hearing officer found Plunkett guilty of both charged infractions. Disciplinary sanctions were imposed. Plunkett was transferred from the correctional facility at Monroe to a higher security facility in Walla Walla and his infractions were reported to federal authorities. Based upon these infractions and others of less severity,[1] the United States Parole Commission informed Plunkett that his then–existing presumptive release date of August 25, 1986, was rescinded and moved back 52 to 80 months.[2] Due to other additional infractions, the Commission further increased Plunkett's guideline range to 52 to 84 months.

Plunkett filed a personal restraint petition concerning this first disciplinary hearing. This court dismissed the petition as moot when the State agreed to rehear the infractions. A second hearing also resulted in a finding that Plunkett was guilty. Plunkett again filed a personal restraint petition, which was dismissed as moot after the State agreed to give Plunkett a third hearing. It is this third hearing that is the subject of Plunkett's current petition.

---

[1]The other infractions were use of abusive language, refusing to work, and possession of contraband.

[2]The pertinent text of the Commission's notice is as follows: "You have committed behavior that constitutes new criminal conduct in a prison facility which is rated as Category Seven severity because it involved forcible rape indicating a guideline range of 52–80 months to be added to your original presumptive date (8–25–86). In addition, your rescission behavior is classified as administrative. Guidelines established by the Commission indicate a range of up to 60 days per disciplinary infraction. You have committed two infractions. Your aggregate guideline range is 52–84 months to be added to the original presumptive (8–25–86). After review of all relevant factors and information presented, a decision outside the guidelines at this consideration is not found warranted."

Plunkett's third hearing was held April 18, 1988, and concerned only one charge: Plunkett's alleged violation of WAC 137–28–030(504), which prohibits inmates from engaging in unauthorized sexual acts. Because Plunkett was housed at Walla Walla, while Krog and the staff witnesses remained at Monroe, this hearing was conducted by telephone.[3] Plunkett objected to the telephonic hearing and refused to call or cross–examine witnesses on the grounds that he could not be assured that he was actually speaking to the desired person and that the hearing examiner was unable to observe the demeanor of any witness other than Plunkett.

Evidence at the hearing included testimony from prison officials who had talked with Krog after the alleged rape, medical reports, and Krog's own testimony. While testifying, Krog mentioned that he had taken a polygraph test at the Snohomish County sheriff's office, and that the polygraph operator concluded that he was telling the truth concerning the alleged rape. A police officer gave similar testimony.

The hearing officer found Plunkett guilty and imposed 10 days' isolation, 20 days' segregation, and "the loss of appropriate good time." Plunkett appealed to the superintendent. The findings of the hearing examiner were upheld. Plunkett then filed a personal restraint petition. The petition raises two issues. First, is a prisoner's right to a fundamentally fair prison discipline proceeding violated by conducting a telephonic hearing? Second, did introduction of evidence that cellmate Krog passed a polygraph test violate Plunkett's right to a fair proceeding?

Plunkett first contends that the result of his third disciplinary hearing should be set aside because all of the witnesses testified by telephone. Plunkett argues that the

---

[3]Plunkett and the hearing officer were in Walla Walla; all other witnesses were in Monroe.

telephonic hearing violated both the WAC provisions governing the conduct of a prison disciplinary hearing and his constitutional right to due process.

Plunkett claims that a telephonic hearing violates WAC 137–28–090(2), which requires that the inmate be present at "all stages of the hearing" except for decisional deliberations and inquiries concerning unidentified witnesses, and WAC 137–28–090(7), which requires that "every effort shall be made" to have staff member witnesses "present to testify at the hearing[.]"[4] It is Plunkett's contention that the word "present", as used in the WAC, means "in person"; *i.e.,* that the inmate and witnesses must all be physically present in the same room. We disagree.

 WAC 137–28–090(7) refers to having prison staff witnesses testify orally rather than by written statement. The WAC directs every hearing officer to make every effort to have staff member witnesses "present to testify at the hearing: *Provided, however,* The written statements of such staff members may be considered in their absence upon a showing of good cause." In the instant case, written statements were unnecessary as staff member witnesses did testify in person and not by written statement. Moreover, as provided for in WAC 137–28–090(3), Plunkett was present to hear the responses of each witness to the questions presented by the hearing examiner and was able, if he chose, to cross–examine these witnesses. The regulations relied upon do not support Plunkett's claim that participants to the hearing must be gathered together in the same physical space during the hearing. To find that it does would require

---

[4]WAC 137–28–090(2) provides:

"The inmate shall be present at all stages of the hearing except during the decisional deliberations and any inquiry the hearing officer may wish to make concerning the identity of unidentified witnesses. An inmate may waive his/her presence at a hearing."

The other provision Plunkett relies upon, WAC 137–28–090(7), provides:

"Where institution staff members are witnesses against the inmate, every effort shall be made to have such witnesses present to testify at the hearing: *Provided, however,* The written statements of such staff members may be considered in their absence upon a showing of good cause."

this court to modify the provision by construction. It is, however, neither the function nor prerogative of this court to revise statutory or WAC provisions by construction. As stated in *In re Estate of Sherwood,* 122 Wash. 648, 655, 211 P. 734 (1922), "courts are loath to read into a statute something which the legislature has not expressly put therein." *See State v. Spino,* 61 Wn.2d 246, 377 P.2d 868 (1963).

Plunkett additionally contends that his due process rights were violated by the telephonic hearing. This contention is also without merit. Plunkett's complaint that the staff witnesses were not in the same room during the hearing is significant only if confrontation rights were implicated. However, an inmate subject to a disciplinary hearing, unlike the accused in a criminal trial, is entitled only to minimal due process protection. In *Wolff v. McDonnell,* 418 U.S. 539, 567, 41 L. Ed. 2d 935, 94 S. Ct. 2963 (1974), the United States Supreme Court specifically held that in prison disciplinary proceedings, an inmate's due process protections do not include the right of confrontation or the right to cross–examine witnesses. *See Balla v. Murphy,* 116 Idaho 257, 775 P.2d 149, 151 (Ct. App. 1989). The *Wolff* Court opined that the balance between the interest of the inmate and the needs of the prison weigh in favor of granting prison officials the necessary discretion to keep hearings within reasonable limits. *Wolff,* at 566; *accord, Dawson v. Hearing Comm., Wash. State Penitentiary,* 92 Wn.2d 391, 597 P.2d 1353 (1979).

At a minimum, due process requires an opportunity to be heard. *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 313, 94 L. Ed. 865, 70 S. Ct. 652, 656 (1950). This opportunity protects the inmate's right to present evidence and argument in contested matters, and Plunkett does not contend that these rights were in any way abrogated. Furthermore, the circumstances of the prison disciplinary process differ from other criminal proceedings and necessitate a limitation of rights. The Court said in *Wolff,* at 567,

If confrontation and cross–examination of those furnishing evidence against the inmate were to be allowed as a matter of course, as in criminal trials, there would be considerable potential for havoc inside the prison walls. Proceedings would inevitably be longer and tend to unmanageability."

Moreover, the Court emphasized that "in a period where prison practices are diverse and somewhat experimental, [the better course] is to leave these matters to the sound discretion of the officials of state prisons." *Wolff*, at 569; *accord, Baxter v. Palmigiano*, 425 U.S. 308, 321–22, 47 L. Ed. 2d 810, 96 S. Ct. 1551 (1976).

Whether the holding in *Wolff* permits telephonic prison disciplinary hearings was considered in a recent Idaho case, *Balla v. Murphy*, 116 Idaho 257, 775 P.2d 149 (Ct. App. 1989). In *Balla,* the court concluded that telephonic hearings "where the inmate is not allowed to ask questions directly to witnesses, or where the witness's responses to such questioning are not audible to both the inmate and the hearing officer", indirectly violate the inmate's right to call witnesses and thus are unconstitutional. *Balla,* 775 P.2d at 152. The court also concluded, however, that when a device is attached to the telephone which enables everyone in the room to hear the witness's testimony, *i.e.,* a speaker phone is used, telephonic hearings satisfy constitutional requirements. *Balla,* at 260.

The Court in both *Wolff* and *Baxter* emphasized that the conduct of prison disciplinary proceedings must be left to the discretion of corrections officials. The Court stressed that an inmate's opportunity to confront and cross–examine witnesses must be tailored to the case at hand. If a telephonic hearing is used, the inmate ordinarily should have the same opportunity to hear testimony as does the hearing officer. Only then can the prisoner be assured of having an opportunity to give responsive testimony in his or her own defense.

Telephonic hearings are a practical means of conducting prison proceedings where the necessary parties are located in different prison facilities around the state. In the instant

case, the telephonic hearing was both logistically and temporally more efficient, and for the reasons stated above, not violative of Plunkett's due process rights.

■■ Review of prison disciplinary proceedings is limited to determining whether the action taken was "so arbitrary and capricious as to deny the petitioner a fundamentally fair proceeding". *In re Reismiller,* 101 Wn.2d 291, 294, 678 P.2d 323 (1984). Given the circumstances here, where Plunkett was incarcerated in Walla Walla while all other witnesses remained in Monroe, the decision to hold a telephonic hearing was not "willful and unreasoning", and thus was not arbitrary and capricious. *Reismiller,* at 296 (quoting *Pierce Cy. Sheriff v. Civil Serv. Comm'n,* 98 Wn.2d 690, 695, 658 P.2d 648 (1983). Moreover, to prevail on a personal restraint petition, the petitioner must show it is more likely than not that he or she was actually prejudiced by the error, *e.g., In re Hagler,* 97 Wn.2d 818, 825, 650 P.2d 1103 (1982). Actual prejudice is not shown here, as the witnesses were available by telephone for both direct and cross examination.

Plunkett's second assignment of error, raised for the first time on collateral review, is that the hearing examiner improperly received evidence of the results of a polygraph examination administered to the victim bearing upon the truth of his rape allegations. Plunkett claims that admission of this evidence deprived him of a fair hearing because (1) he was not warned that the test results would be used, and (2) use of polygraph test results violates due process due to the test's inherent unreliability.

Even in a direct appeal where the defendant's right to review is substantially broader, an appellate court may refuse to review any claim of error which was not raised in the trial court and does not involve an issue of constitutional magnitude. RAP 2.5(a). Plunkett did not object to the introduction of the polygraph evidence at the time of its admission, nor did he raise the issue in his disciplinary hearing appeal to the superintendent.

In challenging the admission of the polygraph evidence for the first time on review, Plunkett seeks to elevate an evidentiary error, if an error at all, "'into the constitutional realm'." *State v. Scott,* 110 Wn.2d 682, 686, 757 P.2d 492 (1988) (quoting *State v. Louie,* 68 Wn.2d 304, 314, 413 P.2d 7 (1966), *cert. denied,* 386 U.S. 1042, 18 L. Ed. 2d 610, 87 S. Ct. 1501 (1967)). By claiming a denial of due process, Plunkett argues that admission of the polygraph evidence raises an issue of constitutional magnitude because of the effect he believes it had on the outcome of his hearing.

The proper way to assess a claim of constitutional error asserted for the first time on review is to first determine whether the error is truly of constitutional magnitude. If the claimed error is not a constitutional error, the court may refuse review on that ground. If the error is of constitutional dimension, then the court should consider the effect the error had on the defendant's trial. *Scott,* at 688.

The admission of the polygraph evidence, with or without proper foundation, does not raise a "manifest error affecting a constitutional right." RAP 2.5(a)(3). This issue was recently addressed in *State v. Trader,* 54 Wn. App. 479, 774 P.2d 522, *review denied,* 113 Wn.2d 1027 (1989), where Division Two of this court held, after a thorough canvass of Washington case law, "that the mere admission of polygraph evidence raises no more than standard evidence questions concerning which constitutional issues are not necessarily implicated." *Trader,* at 484. The court took its analysis a step further and held that even if it was assumed that admission of polygraph evidence has the potential for violating constitutional rights, such rights were waived if not asserted at trial. *Trader,* at 484. Certainly, if this is the rule in a criminal proceeding where the defendant enjoys the full panoply of due process protections, it must also be the rule in a prison discipline proceeding where the limited scope of due process rights available to the prison resident are significantly more restricted. As the court held in *Reismiller,* "[w]e do not

impose the same evidentiary requirements on prison disciplinary proceedings as are imposed on criminal trials, or even probation revocation proceedings." *Reismiller,* at 296–97.

The reach of collateral relief is a narrow one. It is narrower than the relief available under the administrative procedure act (APA) which itself has a narrower scope of review than that available on a direct criminal appeal.[5] To be entitled to relief, the petitioner must make at least a prima facie case demonstrating actual prejudice stemming from constitutional error. *In re Hews,* 99 Wn.2d 80, 91, 660 P.2d 263 (1983). Failure, in the first instance, to claim an error of constitutional magnitude is necessarily fatal. Any objections Plunkett may have had concerning the admissibility of the polygraph evidence and its impact on his Fourth Amendment rights should have been raised at the disciplinary hearing. Because he did not raise them then, he forfeited his right to assert them now. Thus, he is not entitled to collateral relief and the petition is denied.

WEBSTER, J., concurs.

WINSOR, J. (dissenting)—I respectfully dissent. My primary disagreement is with the majority's interpretation of the meaning of "present", as that word is used in WAC 137–28–090(7), which provides:

> Where institution staff members are witnesses against the inmate, every effort shall be made to have such witnesses present to testify at the hearing: *Provided, however,* The written statements of such staff members may be considered in their absence upon a showing of good cause.

---

[5]The opinion in *Dawson v. Hearing Comm., Wash. State Penitentiary,* 92 Wn.2d 391, 597 P.2d 1353 (1979), provides an excellent discussion of why prison disciplinary proceedings do not enjoy the same scope of review as the proceedings falling within the ambit of APA. *Dawson* also emphasizes why, due to the unique nature of the prison setting and prison discipline proceedings, great deference and broad discretion must be given to prison administrators in enforcing disciplinary rules.

The majority concludes that for purposes of this regulation, a witness who testifies by telephone is "present". I disagree.

Undefined unambiguous words within a statute or regulation should be given their ordinary meaning, which may be determined by reference to a dictionary. *Brenner v. Leake,* 46 Wn. App. 852, 854–55, 732 P.2d 1031 (1987); *see also Addleman v. Board of Prison Terms & Paroles,* 107 Wn.2d 503, 509, 730 P.2d 1327 (1986). "Present" is commonly understood as "being in view or at hand". *Webster's New Collegiate Dictionary* 910 (1977). In dictum, we have previously interpreted WAC 137–28–090(7) in accord with this common understanding:

> Where institution staff members are witnesses against the inmate, every effort shall be made to have them present their testimony *in person,* but a written statement can be presented in their absence upon a showing of good cause.

(Italics mine.) *In re Hunter,* 43 Wn. App. 174, 176, 715 P.2d 1146 (1986). I would therefore hold that for purposes of WAC 137–28–090(7), "present" means "in person".

Here, the staff member witnesses did not testify "in person". Despite the regulation's good cause proviso, no attempt was made to justify the staff member's absence. Consequently, I would hold that the telephonic hearing violated WAC 137–28–090(7).

Given the conclusion that the hearing violated the applicable regulation, the question of whether the violation warrants relief in the form of a remand must be addressed. I agree with the majority that under *Wolff v. McDonnell,* 418 U.S. 539, 567–68, 41 L. Ed. 2d 935, 94 S. Ct. 2963 (1974) and *In re Reismiller,* 101 Wn.2d 291, 294, 678 P.2d 323 (1984), the telephonic hearing did not infringe on Plunkett's due process rights. Accordingly, relief cannot be granted on constitutional grounds. I disagree, however, with the majority's reliance on *Reismiller* as authority for denying relief unless "the action taken was 'so arbitrary and capricious as to deny the petitioner a fundamentally fair proceeding'." Majority, at 237 (quoting *Reismiller,* 101

Wn.2d at 294). *Reismiller* is inapposite because it does not concern a prison official's violation of a regulation.

The pertinent case concerning whether relief should be granted to prisoners subjected to a proceeding that violates the Washington Administrative Code is *In re Ayers,* 105 Wn.2d 161, 713 P.2d 88 (1986). In that case five prisoners challenged the length of their prison confinement through a consolidated personal restraint petition. One of their allegations was that actions by the Board of Prison Terms and Paroles (the Board) interfered with their constitutional liberty interest in the "potential of parole". The Supreme Court declined to recognize a constitutional basis for the claimed interest, but concluded that "the Board, by its own regulations, has created such an expectation that should be recognized and followed." *Ayers,* 105 Wn.2d at 167. The court then noted that the Board had not complied with a regulation that required it to make "a concise written statement of findings and conclusions in each case heard under the provisions of this Chapter." *Ayers,* 105 Wn.2d at 167–68 (quoting WAC Title 381, rule 5.170). Explaining that the rule affected "the very liberty of the person," the court remanded the matter to the Board "with directions to comply with their own rules." 105 Wn.2d at 168. Implicit in the *Ayers* court's ruling is its recognition that the Court of Appeals and the Supreme Court are the only bodies that can ensure the Board complies with its own regulations governing its dealings with prisoners.

Because the Board here failed to follow its own regulation, Plunkett's disciplinary proceeding should be remanded once again. If, on remand, the staff member witnesses make the requisite showing of good cause, they may give telephonic testimony. *See generally Balla v. Murphy,* 116 Idaho 257, 775 P.2d 149, 151–53 (Ct. App. 1989) (discussing type of telephonic hearing that would not violate prisoners' due process rights). Without the requisite showing, however, the applicable regulation mandates live, in person testimony.

I also disagree with the majority's resolution of the polygraph evidence issue. From the record it appears that the victim's testimony that he had taken and passed a polygraph examination surprised Plunkett. It also appears that the polygraph results played a significant role in the disciplinary hearing's outcome. Nevertheless, the majority denied relief on this issue solely on the ground that the petitioner, who was not permitted to have an attorney present, failed to claim error at the time of the hearing. Majority, at 239. That would be an appropriate ruling if Plunkett had legal representation, but is an unfair standard to apply to a prisoner who does not have a right to representation by retained or appointed counsel in disciplinary proceedings. *Wolff*, 418 U.S. at 569–70. We should therefore permit Plunkett to raise the issue now, and we should deal with it on the merits. In that regard, two cases are instructive: *State v. Grisby*, 97 Wn.2d 493, 502, 647 P.2d 6 (1982), *cert. denied*, 459 U.S. 1211 (1983), which held that polygraph evidence is not admissible absent a stipulation by the parties; and *Williams v. Oregon State Penitentiary*, 29 Or. App. 455, 564 P.2d 706 (1977), which held that in order for there to be a reasonable opportunity for a fair hearing, polygraph evidence is not admissible in a prison disciplinary proceeding without a foundation consisting of the qualifications of the examiner.

For the reasons outlined above, I would reverse and remand.