IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Detention of<br><br>H.H. | No. 87818-2-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

HAZELRIGG, C.J. — Following revocation of a less restrictive alternative treatment order, H.H. appeals and specifically challenges the admissibility of her medical record, portions of which were admitted after a joint stipulation. However, because she failed to preserve the error, we decline to consider it for the first time on appeal. We also conclude that H.H. cannot establish ineffective assistance of counsel and the evidence in the record supports factual findings that, in turn, support the revocation order. Accordingly, we affirm.

FACTS

On October 4, 2024, seventeen-year-old H.H. was discharged from behavioral health inpatient treatment and stipulated to a court order that determined she was "gravely disabled" as defined by statute and provided for outpatient treatment as a less restrictive alternative (LRA) to inpatient treatment. The order required, among other things, that H.H. comply with outpatient treatment for up to 180 days, take all prescribed medications, refrain from threats or acts of

harm to herself or others, reside at an approved residence, and maintain her health in the community.

About two months later, H.H. was admitted to Seattle Children's Hospital and referred to King County's Designated Crisis Responders, who petitioned to revoke the LRA treatment order.[1] According to a declaration in support of the petition to revoke, H.H. suffers from acute and long-standing eating disorder symptoms, associated chronic and acute malnutrition, and other health issues. The petition alleged that H.H. stopped participating in required outpatient treatment seven days after her discharge, stopped taking her prescribed medications, and ran away from home with a plan to "jump from a height." The petition further asserted that H.H. was gravely disabled and unable to maintain her health, safety, and basic needs outside of an inpatient setting.

A superior court commissioner held a hearing on the petition over two days in January 2025. A psychiatric nurse practitioner who evaluated H.H., Andrew Given, was the only witness to testify at the hearing. Given testified that H.H. was admitted to the hospital based on multiple diagnoses, including major depressive disorder, anorexia nervosa with both binge-purge and restrictive subtypes, generalized anxiety disorder, and a complex history including medical issues "secondary" to her eating disorder, chronic suicidal ideation, and multiple prior suicide attempts. Given opined, based on multiple interviews with H.H., information in the hospital's medical record, and discussions with members of her

---

[1] The record indicates that H.H. was previously admitted to Seattle Children's Hospital in February 2024 and, including the November 2024 admission, H.H. was admitted to a hospital a total of five times in 2024.

treatment team, that H.H. had experienced a "substantial deterioration of functioning" and violated the terms of the October 2024 LRA treatment order.

Before Given testified about the specific information he relied on from H.H.'s medical record, the parties stipulated to the admissibility of the medical record as a business record under RCW 5.45.020. No party subsequently moved to admit the entire medical chart into evidence but Given read portions of the medical record into evidence when, in response to questions from both parties, he described H.H.'s condition and reported the observations of treatment providers. The portions of the medical records Given read included numerous verbatim statements made by H.H. and documented by treatment providers.

There was no objection to Given's testimony until cross-examination when the State objected to hearsay within the medical chart after H.H.'s counsel sought to question Given about H.H.'s family's wishes and her report of sexual abuse during a prior inpatient placement. The commissioner overruled the State's objection to a question about statements made by H.H. and documented in the medical chart but sustained an objection to questioning regarding H.H.'s mother's statements. The commissioner also told H.H.'s counsel that to the extent she sought to admit out-of-court statements as substantive evidence, only those statements that appeared in "direct quotation marks" would be admissible.

After the evidentiary hearing, H.H.'s counsel acknowledged in closing argument that she had not objected to Given's testimony. Nonetheless, she argued that the court should not consider as substantive evidence any testimony reporting hearsay statements that were "not in quotes" within the medical chart.

The commissioner entered a written order that included a finding that H.H. violated the terms of the LRA treatment order because, among other things, she admitted to stopping her medication before she was hospitalized, had a "plan to jump off a bridge," and was "not complying with treatment." The order also included a finding that H.H.'s routine functioning had substantially deteriorated because she was "highly suicidal," had recent difficulty attending to hygiene and other activities of daily living, and was not consistently willing to eat, drink, or take her medications. Based on these findings, the commissioner revoked the LRA order and committed H.H. to involuntary inpatient treatment for up to 180 days.

H.H. filed a motion to revise the commissioner's order, arguing that the State failed to meet its burden of proof because it relied on chart notes that paraphrased H.H.'s statements and could not be considered for the truth of the matter asserted because they were inadmissible hearsay. A superior court judge denied the motion for revision.

H.H. timely appealed.

ANALYSIS

H.H. contends the State failed to establish that her medical record, which encompassed entries authored by several treatment providers, was admissible evidence under an exception to the hearsay rule. H.H. further argues that the trial court's error when it admitted hearsay evidence was not harmless because the court relied on the hearsay documented in the medical record to support the findings and revocation order. She also asserts in the alternative that her attorney

was ineffective for failing to timely object to the purported hearsay evidence. For the reasons set forth herein, we disagree.

I.      Standard of Review

When a superior court decides a motion to revise, we review de novo the superior court's decision, not that of the court commissioner. *In re Det. of L.K.*, 14 Wn. App. 2d 542, 550, 471 P.3d 975 (2020). We review the superior court's decision "'based on the evidence and issues presented to the commissioner.'" *Id*. (quoting *In re Vulnerable Adult Pet. for Winter*, 12 Wn. App.2d 815, 829, 460 P.3d 667 (2020)). The court commissioner's findings and orders, if not successfully revised, become the orders and findings of the superior court. *Id.*

II.     Hearsay

The evidentiary rules apply to civil commitment proceedings under chapter 71.05 RCW. *See* RCW 71.05.310. The relevant rule of evidence here is the hearsay rule. "Hearsay" is an out-of-court statement offered to prove the truth of the matter asserted. ER 801(c). "Hearsay is not admissible except as provided by these rules, by other court rules, or by statute." ER 802. RCW 5.45.020 provides an exception for records kept in the ordinary course of business as follows:

> A record of an act, condition or event, shall in so far as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business, at or near the time of the act, condition or event, and if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission.

Another exception to the general hearsay rule allows an expert to relay otherwise inadmissible hearsay to show the basis for their expert opinion, but this exception does not allow the trier of fact to rely on that hearsay as substantive evidence. *See* ER 703; *In re Dependency of A.C.*, 1 Wn.3d 186, 192, 525 P.3d 177 (2023).

H.H. acknowledges that her own statements are exempt from the hearsay rule as admissions, without regard to whether those statements were quoted directly or "paraphrased." *See* ER 801(d)(2) (party's own out-of-court statements not considered hearsay and admissible as substantive evidence when offered against that party). However, she argues in briefing that a "medical record that could potentially qualify under the business record exception to the hearsay rule, RCW 5.45.020, remains inadmissible hearsay if a proper business record foundation is not laid at trial." This contention is premised on an implicit concession that such medical records "could potentially qualify" under that hearsay exception. Nevertheless, H.H. maintains that the State did not lay a proper foundation to admit the medical chart as a business record under RCW 5.45.020 and, therefore, failed to establish that "[e]ach level of hearsay" was "independently admissible" under an exception to the hearsay rule. Thus, according to H.H., the entirety of Given's testimony about entries in her medical chart was hearsay and inadmissible and could only be considered as the basis for Given's opinions, but not as substantive evidence.

This argument fails for several reasons but primarily because H.H. did not object at any point when Given read portions of the medical record during his testimony. A party challenging the admission of evidence must make a timely and

specific objection at trial. *See* ER 103(a)(1); RAP 2.5(a); *State v. Powell*, 166 Wn.2d 73, 82, 206 P.3d 321 (2009) (plurality opinion). We have strictly applied RAP 2.5(a) to claimed evidentiary errors because a failure to object deprives the trial court of the opportunity to correct the error. *See Powell*, 166 Wn.2d at 82.

H.H. asserts that her objection during closing argument preserved the error for review. This is incorrect. First, H.H.'s objection at the conclusion of the hearing related only to the consideration of statements that were "not direct quotations" and did not address the applicability of the business record exception to the chart itself. Washington courts have long held that an objection is not preserved for purposes of an appeal unless that particular basis for the objection was presented in the trial court. *See, e.g., State v. Korum*, 157 Wn.2d 614, 648, 141 P.3d 13 (2006) (objecting to evidence in trial court on one ground does not preserve objection for appeal based on different grounds); *State v. Guloy*, 104 Wn.2d 412, 422, 705 P.2d 1182 (1985) (accord). Second, challenging the medical record evidence in closing argument did not provide the commissioner with an opportunity to correct the error by addressing the foundational concerns H.H. now raises. *See State v. Kalebaugh*, 183 Wn.2d 578, 583, 355 P.3d 253 (2015). Third and finally, no authority supports H.H.'s position that a challenge to the admissibility of evidence raised after the evidentiary portion of trial has closed can be considered timely or contemporaneous. *See Powell*, 166 Wn.2d at 82.

H.H. also maintains that she "did not need to object to hearsay when medical entries were read into evidence," because in a bench trial, she was entitled

to presume that the trial court would disregard inadmissible evidence.[2] *See State v. Read*, 147 Wn.2d 238, 242, 53 P.3d 26 (2002) ("[I]n the absence of evidence to the contrary, we presume the judge in a bench trial does not consider inadmissible evidence in rendering a verdict."). However, H.H. does not assert that medical records *cannot* qualify as business records as a matter of law. And perhaps more critically, the record shows that the State offered no testimony to establish a foundation because H.H. expressly stipulated that the record qualified as a business record. Because admissibility was not only uncontested but also affirmatively conceded by written stipulation, the State was not required to lay a foundation. *See In re Pers. Restraint of Plunkett*, 57 Wn. App. 230, 238, 788 P.2d 1090 (1990) (foundational prerequisites may be waived).

H.H. offers a variety of reasons why her stipulation was ineffective or should have been disregarded. None are persuasive. While it is true that trial courts are not bound by parties' stipulations with regard to legal questions, there is no disputed legal question here as the parties agree in their respective briefing on appeal that medical records may qualify for admission as business records under RCW 5.45.020. H.H. provides no authority that supports her position that the stipulation at the start of the hearing on the LRA revocation was a "nullity" because the court took no action to "ratify" it. Contrary to H.H.'s suggestion, nothing in the record indicates that the trial court did not give effect to the stipulation or that the State presented any objections that were inconsistent with the stipulation.

---

[2] Perhaps more critically, her alternate assignment of error, addressed in Part III *infra*, that avers counsel was ineffective for failing to timely object necessarily undercuts her contentions here that her objection during closing argument was sufficient to preserve the error or that an objection was not needed at all.

H.H.'s challenge to the admissibility of her medical records is not preserved, and we decline to reach the merits of her contention that various statements contained therein were improper hearsay.

III.    Ineffective Assistance of Counsel

Alternatively, H.H. claims she was deprived of effective assistance of counsel because her attorney failed to timely and properly object to Given's testimony about information in her medical chart.

"[A] respondent in a civil commitment proceeding . . . has the statutory right to the effective assistance of counsel." *In re Det. of T.A.H.-L.*, 123 Wn. App. 172, 178, 97 P.3d 767 (2004).  To prevail on a claim of ineffective assistance of counsel, H.H. must establish both that her attorney's performance was deficient and prejudicial such that "'there is a reasonable probability that, but for counsel's errors, the result of the trial would have been different.'"  *Id*. at 181-82 (quoting *State v. Hendrickson*, 129 Wn.2d 61, 78, 917 P.2d 563 (1996), *overruled on other grounds by Carey v. Musladin,* 549 U.S. 70 (2006)).  "If either element of the test is not satisfied, the inquiry ends."  *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009).  Performance is deficient if, "given all the facts and circumstances, [the] attorney's conduct failed to meet an objective standard of reasonableness."  *T.A.H.-L.,* 123 Wn. App. at 181.  We strongly presume that counsel's representation was effective.  *Id*. at 182.

H.H. points to nothing in the record suggesting that the State would have been unable to lay a proper foundation to admit the medical record as a business record had her counsel objected and declined to stipulate to the admissibility of

her medical chart. Where a claim of ineffective assistance of counsel is premised on "their attorney's failure to object, then 'the [appellant] must show that the objection would likely have succeeded.'" *State v. Vazquez*, 198 Wn.2d 239, 248, 494 P.3d 424 (2021) (quoting *State v. Crow*, 8 Wn. App. 2d 480, 508, 438 P.3d 541 (2019)). Case law addressing analogous records holds that once an adequate foundation is established, those records are admissible as business records under RCW 5.45.020. *See In re Welfare of M.R.*, 200 Wn.2d 363, 387, 518 P.3d 214 (2022) (holding trial court did not abuse its discretion concluding drug rehabilitation and testing center incident report qualified as business record under RCW 5.45.020); *State v. Ziegler*, 114 Wn.2d 533, 538-39, 789 P.2d 79 (1990) (holding no error in concluding laboratory reports in medical records qualified as business records). H.H. cannot demonstrate that an objection on this basis to the evidence she now challenges on appeal would have been successful. Accordingly, she does not establish deficient performance, and her claim of ineffective assistance necessarily fails.

Further, even if there were reason to question the admissibility of the medical chart, "decisions regarding whether and when to object fall firmly within the category of strategic or tactical decisions." *State v. Johnston*, 143 Wn. App. 1, 19, 177 P.3d 1127 (2007). While some medical chart entries unquestionably supported the State's position, there was also information in the records favorable to H.H.'s position, which her counsel expressly relied on to oppose revocation. For instance, H.H.'s attorney highlighted certain information in the medical record to argue that H.H. was physically stable and had not recently engaged in some

behaviors commonly associated with eating disorders. They also emphasized certain portions of the chart to counter the State's position that H.H. was actively suicidal.

The record establishes that it was a legitimate trial strategy to stipulate that the medical record was subject to the business records exception to the hearsay rule and refrain from objection on that basis. Because counsel's tactical decision cannot be characterized as deficient, we need not address prejudice. *See Kyllo*, 166 Wn.2d at 862.

IV.     Sufficiency of the Evidence

H.H. also challenges the sufficiency of the evidence supporting the revocation and commitment order.

RCW 71.05.590(5)(d) sets forth the various bases on which a court may revoke an LRA treatment order and includes in that list a showing that the detained person failed to adhere to the terms and conditions of the LRA treatment order or a substantial deterioration of the detained person's functioning has occurred. We review the superior court's decision to determine whether substantial evidence supports its findings of facts and whether the findings support its conclusions of law and ultimate decision. *In re Det. of A.F.*, 20 Wn. App. 2d 115, 125, 498 P.3d 1006 (2021). "'Substantial evidence is the quantum of evidence sufficient to persuade a fair-minded person' that the premise is true." *In re Det. of A.M.*, 17 Wn. App. 2d 321, 330, 487 P.3d 531 (2021) (quoting *In re Det. of H.N.*, 188 Wn. App. 744, 762, 355 P.3d 294 (2015)). When evaluating the sufficiency of the evidence, we consider the evidence in the light most favorable to the State. *Id*.

The sole basis for H.H.'s challenge to the factual findings is that they could not be supported by information and statements derived from medical chart entries since that evidence was hearsay and no exception applied to render it admissible. But as previously explained, H.H. failed to preserve for review any evidentiary error. For this reason, H.H.'s reliance on a harmless error analysis is also misplaced. *See A.C.*, 1 Wn.3d at 194 (applying "materially affected" standard").

Considering all properly admitted evidence, including testimony about H.H.'s medical chart, the evidence supports the findings that H.H. violated the terms of the October 2024 LRA order. Specifically, there was testimony that while H.H. was living with family subject to the LRA order she stopped taking her prescribed medications entirely and did not participate in outpatient treatment. Also during this time, H.H. became physically violent toward family members. Eventually, H.H. ran away from home at a time when she expressed suicidal intent.

The evidence presented also supports the finding that H.H. experienced a substantial deterioration of functioning since the LRA order was issued. In the month following her hospital admission, H.H. repeatedly expressed suicidal ideation and that her inability to function was due to "brain fog." H.H. also intermittently refused water, nutrition, medications, and monitoring. There was evidence that H.H. was, at times, unable to attend to her hygiene or activities of daily living. H.H. admitted to hospital staff that she was unable to care for herself and would not likely attend outpatient treatment if discharged.

The evidence in the record is sufficient to support the findings that H.H. failed to adhere to the terms of the October 2024 LRA treatment order and

experienced a substantial deterioration of functioning between the date it was issued and the hospitalization material to this appeal. Those findings support the decision to revoke the LRA treatment order and order involuntary inpatient treatment. H.H. otherwise fails to establish error.

Affirmed.

WE CONCUR: