[No. 21269-6-III. Division Three. January 16, 2003.]

*In the Matter of the Personal Restraint of* JOHN E. LELAND, *Petitioner.*

518

520

*Cece L. Glenn*, for petitioner.

*Christine O. Gregoire, Attorney General*, and *Jennifer L. Karol, Assistant*, for respondent.

BROWN, C.J. — John E. Leland seeks relief from personal restraint in the form of 90 days lost good time credit and other sanctions imposed February 7, 2002 after a Department of Corrections (DOC) hearing officer found him guilty of a serious prison infraction under WAC 137-28-260 (752) (receiving a positive test for use of unauthorized drugs). Because Mr. Leland alleged due process violations in the conduct of his disciplinary hearing, the court directed DOC to submit a response on the merits. DOC instead preemptively and summarily held a rehearing of the infraction and reimposed the loss of good time sanction and, in addition,

has placed him on no-contact visitor status. DOC then opined the personal restraint petition was thus rendered moot. We disagree.

This petition presents two primary questions. First, did DOC lack jurisdiction to hold a rehearing of Mr. Leland's infraction while his personal restraint petition was pending in the appellate court? Second, was Mr. Leland denied due process rights at his initial infraction hearing and, if so, what is his remedy? The answer to both questions is yes. Accordingly, we grant Mr. Leland's personal restraint petition, vacate the February 7, 2002 serious infraction ruling, deem the rehearing void, and direct restoration of Mr. Leland's lost good time credits.

## FACTS

Mr. Leland received the "752" infraction based upon the following staff report of Sergeant Perkins, as contained in the Initial Serious Infraction Report:

> On 01-28-02 at approximately 1930, Officer Turner collected a urine sample from inmate Leland, John . . . . The sample was tested on 02/05/02 by Comprehensive Toxicology Services. The sample tested positive for Cocaine. The positive test result was confirmed by thin layer chromatography. Proper procedures were followed for the collection, storage, and transfer of the specimen per DOC Policy 420.380.

DOC Second Suppl. Resp. (Oct. 7, 2002), Attach. A, Serious Infraction Report. Mr. Leland acknowledged in writing his receipt of a disciplinary hearing notice on February 6, 2002. He requested witness statements from staff officers Hughes, Neal, and Turner. At some point not disclosed in the record, Mr. Leland received a copy of the February 5 toxicology report showing a positive cocaine test. He has attached a photocopy of the report to his personal restraint petition.

The minutes from Mr. Leland's disciplinary hearing held February 7, 2002 reveal that none of his requested witness

statements were produced for the hearing. He pleaded "not guilty" and gave the following testimony:

> " 'I have 9 months left—taking time won't do me any good. I have problems, I've requested treatment. I haven't had a major infraction for [the] past 4 [years] for [a] dirty U.A. Please be easy on [my] good time.' "

DOC Second Suppl. Resp. (Oct. 7, 2002), Attach. B, Disciplinary Hr'g Mins. & Findings.

The hearing officer found Mr. Leland guilty based upon the following reason: "Staff report—U.A. test was confirmed positive by testing. Inmate does not deny use of cocaine but utilized a 'Not Guilty' with past good behavior plea." DOC Second Suppl. Resp. (Oct. 7, 2002), Attach. B, Disciplinary Hr'g Mins. & Findings. The hearing officer imposed sanctions totaling 90 days loss of good time credit and 10 days segregation.

Mr. Leland appealed the guilty finding to the prison superintendent, contending his constitutional rights were violated because he was denied his requested witness statements—his only defense to the infraction. Mr. Leland contended that proper collection procedures were not followed so as to obtain a valid urine sample. He alleged that during his several attempts to submit a sample in the allotted two-hour testing period, seven other urinalysis tests were administered in the same restroom. He claimed that his specimen cup was left uncovered on top of the paper towel dispenser and out of the officers' view in the restroom after each of his six failed attempts to provide a sample. He alleged that unit porters had access to that restroom, which staff members also used during the testing period. He admitted to having a drug problem and stated he needs treatment.

The superintendent denied Mr. Leland's appeal, reasoning:

> [I]n looking onto this matter I spoke with Officers Hughes, Turner and Neal as to the process they used to collect the urine specimen. All indicated that at no time were there any other

offenders in the bathroom without being escorted by a staff member. The procedures for collecting urinalysis were followed correctly, as there is no evidence to prove otherwise. The hearing process was also followed correctly and the sanctions imposed are fair.

Appeal Decision attached to Pers. Restraint Pet. (Mar. 5, 2002).

Mr. Leland then filed this personal restraint petition on July 12, 2002, claiming the hearing officer denied his due process rights to present evidence in his own behalf, denied him access to the evidence used against him, and failed to give him reasonable time to prepare a defense. He claimed the outcome of the hearing might have been different had he been allowed to present a defense. He additionally claimed the hearing officer failed to give sufficient reasons for the evidence relied on, but merely relied on the "cursory" staff report of Sergeant Perkins. Thus, the guilty finding did not satisfy evidentiary due process requirements. Mr. Leland requested that the infraction be expunged from his disciplinary file or, in the alternative, that he receive a disciplinary hearing that comports with due process.

On July 31, the court directed DOC to respond to the merits of Mr. Leland's petition within 30 days. RAP 16.9. On August 26, DOC submitted a response stating, in part:

> The Department of Corrections has determined that it will conduct a rehearing of the infractions challenged by Petitioner pursuant to the authority granted in WAC 137-28-380(3) and will adjust Petitioner's records to reflect the results of such rehearing.

DOC further stated that its decision to rehear the infraction would appear to render Mr. Leland's challenges moot. DOC finally stated it does not oppose keeping the petition open for a reasonable length of time so that Mr. Leland may challenge the results of the rehearing if he is again found guilty. DOC did not specify the reasons for a rehearing or otherwise address the merits of Mr. Leland's claims.

On August 29, the court directed DOC to respond to the merits of Mr. Leland's petition within 20 days, notwith-

standing its August 26 response. DOC filed a supplemental response on September 18, conceding that Mr. Leland did not receive 24 hours notice prior to the disciplinary hearing and that the "witness statements Petitioner requested may not have been provided before the hearing occurred." DOC Suppl. Resp. (Sept. 18, 2002) at 2. DOC stated that it contested Mr. Leland's other claims, but its response did not otherwise address the merits of those claims. DOC's response concluded:

> Nevertheless, the Department of Corrections *has conducted a rehearing* of the infractions challenged by Petitioner pursuant to the authority granted in WAC 137-28-380(3). Accordingly, Petitioner's challenge to his prior disciplinary hearing and sanctions is moot. *BBG Group, LLC v. City of Monroe*, 96 Wn. App. 517, 521, 982 P.2d 1176 (1999).

(Emphasis added.) DOC Suppl. Resp. (Sept. 18, 2002) at 2. DOC thus requested that Mr. Leland's petition be dismissed. The supplemental response does not divulge the date of the rehearing.[1]

On September 25, the court directed DOC to submit written briefing on (1) whether DOC has jurisdiction/authority to conduct a rehearing of an infraction that is subject to a personal restraint petition pending in the Court of Appeals, and (2) what evidence supports the guilty finding in the first infraction hearing. DOC finally filed a response to the merits of Mr. Leland's opening petition on October 7.

---

[1] The rehearing was apparently conducted on or before September 10. On that date, Mr. Leland submitted a sworn statement that was received by this court on September 13. Mr. Leland stated the hearing was unfair. He submitted several attachments, including copies of post hoc written officer statements that he originally requested for his February 7, 2002 infraction hearing. The statement of Officer Hughes is dated August 26, 2002. Officer Neal's statement is dated August 27 and Officer Turner's statement is dated August 24. Thus, the documents were apparently produced for purposes of the rehearing. Substantively, these statements would validate the collection of Mr. Leland's sample on January 28. DOC moves to strike these documents from the record in this petition because Mr. Leland did not serve DOC with his documents submitted to this court. *See infra* ANALYSIS and n.6.

The court thereafter entered an order referring the matter to a panel of judges and appointing counsel for Mr. Leland.

## ANALYSIS

### A. Jurisdiction

The issue is whether DOC erred in deciding it had jurisdiction or authority to summarily conduct a rehearing of a serious prison infraction when the petitioner's personal restraint petition challenging the infraction was pending in the Court of Appeals.

■ ■ "In general, subject matter jurisdiction is an 'elementary prerequisite to the exercise of judicial power.' " *Okanogan Wilderness League, Inc. v. Town of Twisp*, 133 Wn.2d 769, 788, 947 P.2d 732 (1997) (Durham, C.J., concurring) (quoting *In re Adoption of Buehl*, 87 Wn.2d 649, 655, 555 P.2d 1334 (1976)). "Where a court has no subject matter jurisdiction, the proceeding is void." *Id.* "A court's lack of subject matter jurisdiction may be raised by a party or the court at any time in a legal proceeding." *Id.* The authority of a tribunal "is confined by the terms of its authorizing statute"; the tribunal "has no power to assume jurisdiction greater than that conveyed by the statute." *Id.* at 788-89. These principles apply by analogy to the DOC disciplinary tribunal.

RAP 16.1 provides that the rules in Title 16 RAP establish the procedure for original actions in the Court of Appeals. RAP 16.1(c) provides, "Rules 16.3 through 16.15 define the procedure for a personal restraint petition, but only when the proceeding is started for the first time in the appellate court." RAP 16.3(c) provides that "[t]he Supreme Court and the *Court of Appeals have original concurrent jurisdiction in personal restraint proceedings* in which the death penalty has not been decreed." (Emphasis added.) A personal restraint petition is filed with the clerk of the appellate court. RAP 16.8(a), (b).

RAP 16.11(b) provides in part:

> The Chief Judge determines at the initial consideration of the petition the steps necessary to properly decide on the merits the issues raised by the petition. If the issues presented are frivolous, the Chief Judge will dismiss the petition. If the petition is not frivolous and can be determined solely on the record, the Chief Judge will refer the petition to a panel of judges for determination on the merits. . . . The Chief Judge may enter other orders necessary to obtain a prompt determination of the petition on the merits.

Furthermore, RAP 16.9 provides:

> The respondent must serve and file a response within 30 days after the petition is served, unless the time is extended by the commissioner or clerk for good cause shown, or unless the court can determine without requiring a response that the petition should be dismissed under RCW 10.73.140. *The response must answer the allegations in the petition.* The response must state the authority for the restraint of petitioner by respondent and, if the authority is in writing, include a conformed copy of the writing. *If an allegation in the petition can be answered by reference to a record of another proceeding, the response should so indicate and include a copy of those parts of the record which are relevant. Respondent should also identify in the response all material disputed questions of fact.*

(Emphasis added.) RAP 16.17 provides: "Rules 1.1, 1.2, 18.1, 18.3 through 18.10, and 18.21 through 18.24 are applicable to the special proceedings in this title." With regard to words of command, RAP 1.2(b) provides:

> Unless the context of the rule indicates otherwise: "Should" is used when referring to an act a party or counsel for a party is under an obligation to perform. The court will ordinarily impose sanctions if the act is not done within the time or in the manner specified.

■ Thus, Title 16 RAP confers upon the Court of Appeals (1) original jurisdiction of personal restraint petitions, and (2) the authority to direct or order the steps necessary to decide the appropriate disposition of the petition. Title 16 RAP does not state that any other entity besides the appel-

late court has jurisdiction or authority to act in a pending personal restraint petition.

*Dawson v. Hearing Committee*, 92 Wn.2d 391, 597 P.2d 1353 (1979), is consistent with the above principles. In *Dawson*, the court held that prison disciplinary hearings are not subject to judicial review under the Administrative Procedures Act, former chapter 34.04 RCW. The court explained that the prisoner's remedy is to seek review in the state courts "through the traditional writs of habeas corpus, certiorari, and mandamus, as well as personal restraint petitions under RAP 16.3 . . . ." *Dawson*, 92 Wn.2d at 398. RAP 16.3(a) now provides that rules 16.3 through 16.15 and rules 16.24 through 16.27 establish a single procedure for original proceedings in the appellate court to obtain relief formerly available by writ of habeas corpus or by application for postconviction relief.

DOC nevertheless contends it has jurisdiction over matters that are subject to pending personal restraint petitions, as founded in RCW 72.09.130(1), which provides:

> The department shall adopt, by rule, a system that clearly links an inmate's behavior and participation in available education and work programs with the receipt or denial of earned early release days and other privileges. The system shall include increases or decreases in the degree of liberty granted the inmate within the programs operated by the department, access to or withholding of privileges available within correctional institutions, and recommended increases or decreases in the number of earned early release days that an inmate can earn for good conduct and good performance.

This rule-making power is also enabled by RCW 72.09.050 (secretary of department of corrections authorized to promulgate standards for the department). *See* WAC 137-28-150; *see also* RCW 72.01.090 (department authorized to make its own rules for the proper execution of its powers and shall have the power to adopt rules and regulations).

WAC 137-28-380 provides the framework for an inmate to appeal a hearing officer's decision to the prison superintendent. DOC cites to WAC 137-28-380(3) as its specific au-

thority to conduct rehearings of infractions. The regulation provides:

> The superintendent shall act on the appeal within ten working days of its receipt. The superintendent may affirm the decision of the hearing officer; reduce the charge to a lesser included offense; . . . reduce the severity of the sanctions imposed; vacate the judgment of the hearing officer; *or remand the matter for a new hearing.* Any new hearing may not result in an increase in the severity of the sanctions originally imposed unless the inmate is charged with related or additional offenses.

(Emphasis added.)

Thus, the regulation plainly allows the superintendent to remand the infraction matter for a rehearing. But that authority is in the context of the DOC internal appeal process. The regulation in no way addresses matters already decided by the superintendent that later become the subject matter of personal restraint petitions filed in the appellate court. The regulation does not provide for any concurrent jurisdiction of DOC with the appellate courts or purport to authorize DOC to exercise jurisdiction over pending personal restraint petitions.

And no disharmony with respect to jurisdiction exists between RAP 16.3(c) and WAC 137-28-380, or its enabling statutes. *See State v. Blilie*, 132 Wn.2d 484, 491, 939 P.2d 691 (1997) (courts make every effort to harmonize apparent conflicts; court rule governs over inconsistent procedural statute). RAP 16.3 is clear on the subject of original appellate court jurisdiction, while WAC 137-28-380 pertains to DOC's internal appeal procedures. Moreover, an administrative regulation is not a court rule. *See Den Beste v. Pollution Control Hearings Bd.*, 81 Wn. App. 330, 341, 914 P.2d 144 (1996).

Applying the above principles, we conclude DOC lacks jurisdiction or authority to summarily conduct a rehearing of a personal restraint petition pending in the Court of Appeals. There is no legislative authority for DOC to

assume jurisdiction in an original action filed in the Court of Appeals under Title 16 RAP.[2]

DOC's cited case *State ex rel. Evergreen Freedom Foundation v. Washington Education Ass'n,* 140 Wn.2d 615, 999 P.2d 602 (2000) does not support its position. The case states well-settled principles that administrative agency powers "are derived from statutory authority expressly granted or necessarily implied," and an agency may adopt rules which "fill in the gaps" if necessary to effectuate the general statutory scheme. *Evergreen,* 140 Wn.2d at 634. DOC has already enacted a rule allowing the superintendent to remand for a new hearing as part of the agency appeal process. There is no legislative authority for DOC to extend its own jurisdiction over original appellate court actions.

*In re Personal Restraint of Plunkett,* 57 Wn. App. 230, 788 P.2d 1090 (1990) is likewise not controlling as to the jurisdiction issue here. In *Plunkett,* the Court of Appeals twice dismissed petitions as moot when DOC agreed to rehear the infractions. Plunkett filed another personal restraint petition after the third hearing, which involved only one of the infractions. The court upheld the guilty finding. The *Plunkett* opinion does not indicate reasons for

---

[2] As pertinent to jurisdiction, Mr. Leland additionally contends RAP 7.2, RAP 7.3, and RAP 8.3 should apply by analogy to DOC authority in the personal restraint petition context. RAP 7.2(a) provides that after review is accepted by the appellate court, a trial court has authority to act only to the extent provided in RAP 7.2, "unless the appellate court limits or expands that authority as provided in" RAP 8.3. RAP 7.2(e) requires a trial court to seek the appellate court's permission before making a determination that would change a decision currently under review. RAP 7.3 authorizes the appellate court to determine whether a matter is properly before it and to perform all acts necessary or appropriate to secure fair and orderly review. Mr. Leland further contends that because an appellate court must decide matters based upon the record before the trial court, consideration of events occurring while the appeal is pending would interfere with its ability to conduct a fair and orderly review. *Inman v. Netteland,* 95 Wn. App. 83, 89, 974 P.2d 365 (1999). Although these principles are all analogous, the cited rules are not among those that RAP 16.17 references as applicable under Title 16 RAP. The jurisdictional rules in RAP 16.1 and RAP 16.3, as well as the authority of the court and chief judge as expressed in RAP 16.11(b), are dispositive of jurisdictional issues.

dismissal of the first two petitions. The case also did not involve rehearing of a pending personal restraint petition.[3]

In Mr. Leland's case, the prison superintendent affirmed the decision of the hearing officer, thus rejecting his appeal. Under the plain wording of WAC 137-28-380(3), the superintendent had the option to instead order a new hearing to alleviate due process concerns. But once Mr. Leland's administrative appeal was denied and he filed the instant personal restraint petition, the Court of Appeals acquired original jurisdiction under Title 16 RAP. In this setting, the DOC disciplinary hearing tribunal is similar to any lesser tribunal with no authority to act over the pending petition. *See Okanogan Wilderness*, 133 Wn.2d at 788-89.

In view of the due process claims raised in Mr. Leland's petition, the court called for a response on the merits from DOC. RAP 16.9. DOC acted outside its jurisdiction when it summarily held a rehearing of the infraction instead of filing a response explaining its position on the merits. In these circumstances, DOC's rehearing of Mr. Leland's infraction is a nullity. *See Okanogan Wilderness*, 133 Wn.2d at 788.

We therefore conclude that the substance of Mr. Leland's personal restraint petition should be decided on the evidence and pleadings pertinent to the February 7, 2002 hearing.

■ DOC instead claims Mr. Leland's petition is moot because it held the rehearing—one of the alternative forms of relief he requested—and now he is no longer under unlawful restraint as a result of the February 7 hearing. DOC says he has no legally cognizable interest or opportunity for further relief, and that no continuing question of

---

[3] DOC's other cited case *Rhodes v. Chapman*, 452 U.S. 337, 101 S. Ct. 2392, 69 L. Ed. 2d 59 (1981) pertains to whether "double celling" in prisons constitutes cruel and unusual punishment. Addressing that question, the court explained that judicial inquiries must " 'spring from constitutional requirements and that judicial answers to them must reflect that fact rather than a court's idea of how best to operate a detention facility.' " *Rhodes*, 452 U.S. at 351 (quoting *Bell v. Wolfish*, 441 U.S. 520, 539, 99 S. Ct. 1861, 60 L. Ed. 2d 447 (1979)). Here, the court is reviewing alleged due process violations in the disciplinary hearing context—a topic within its purview.

great public importance exists. DOC would apparently require Mr. Leland to petition anew to challenge the results of the rehearing. We believe this begs the question of jurisdiction. And no order dismissing the petition (as moot or otherwise) has yet been entered. Mr. Leland should not be held after the fact to a requested alternative remedy if a greater one requested by him may be legally proper. In any event, the court, and not DOC, should make that decision.

DOC argues this court would ultimately be restricted to the same remedy DOC afforded on its own—a rehearing—because even in a criminal proceeding a remand for a new trial is the greatest remedy available. In the same vein, DOC says double jeopardy principles do not apply in the context of prison disciplinary hearings, so a rehearing cannot be barred in any event.

■■ These arguments are off the mark. In *In re Pers. Restraint of Hews*, 99 Wn.2d 80, 88, 660 P.2d 263 (1983), the court set out three options for judicial review of personal restraint petitions: (1) dismissal of the petition, (2) vacation of the infraction and restoration of lost good time credit, or (3) a remand for a hearing on the merits. Indeed, due process violations in the conduct of a disciplinary hearing may warrant vacation of an infraction and restoration of lost good time credits—the same primary remedy requested by Mr. Leland. *In re Pers. Restraint of Krier*, 108 Wn. App. 31, 45, 29 P.3d 720 (2001). Moreover, criminal cases reversed on appeal for insufficiency of the evidence are dismissed with prejudice. A retrial in that situation would violate double jeopardy. *See, e.g., State v. Hescock*, 98 Wn. App. 600, 989 P.2d 1251 (1999).[4]

---

[4] DOC's several cited federal and Washington state cases for the proposition that double jeopardy principles do not apply to prison disciplinary hearings are all distinguishable. None involved rehearing of a prison disciplinary infraction. All involved separate governmental prosecution for prison misbehavior or parole violations that were criminal offenses. *United States v. Brown*, 59 F.3d 102 (9th Cir. 1995); *Garrity v. Fiedler*, 41 F.3d 1150 (7th Cir. 1994); *United States v. Rising*, 867 F.2d 1255 (10th Cir. 1989); *Kerns v. Parratt*, 672 F.2d 690 (8th Cir. 1982); *United States v. Zuleta Herrera*, 504 F.2d 859 (5th Cir. 1974); *United States v. Stuckey*, 441 F.2d 1104 (3d Cir. 1971); *Hamrick v. Peyton*, 349 F.2d 370 (4th Cir. 1965); *Gibson v. United States*, 161 F.2d 973 (6th Cir. 1947); *In re Pers. Restraint*

DOC also argues it is a waste of judicial resources to wait to rehear a disciplinary infraction when DOC determines at the outset that a rehearing is warranted. DOC contends that if it were required to petition the court for authority to conduct a rehearing, it would take extensive time as compared to DOC rehearing the matter on its own—arguably subjecting an inmate to unlawful restraint for a longer time than if a rehearing were conducted. DOC also appears to contend that forcing it to move for permission to rehear an infraction could result in CR 11 problems if DOC unnecessarily delays in informing the court that a personal restraint petition may be legally indefensible.

But DOC could raise these problems well within its 30-day response period as provided by RAP 16.9. Further, the answer could include a motion by DOC, explaining the substantive reasons for its requested relief. The petitioner is then given 30 days to reply to the DOC response. *See* RAP 16.10(a)(2). The chief judge then has authority under RAP 16.11(b) to enter appropriate orders necessary to promptly determine the petition on the merits. But the court usually cannot be certain of the appropriate remedy until it at least receives the respondent's substantive answer. DOC can avoid its concerns expressed above by expeditiously filing its response on the merits. That did not happen here.

We conclude that DOC lacked jurisdiction or authority to conduct a rehearing of Mr. Leland's infraction while the personal restraint petition was pending. The results of the rehearing are a nullity. The opening petition is not moot because no dismissal order has been entered.

## B. Due Process

The issue is whether DOC violated Mr. Leland's due process rights when conducting the February 7, 2002 disciplinary hearing, and if so, what is his remedy?

*of Mayner*, 107 Wn.2d 512, 521, 730 P.2d 1321 (1986); *State v. Williams*, 57 Wn.2d 231, 232, 356 P.2d 99 (1960).

■ Mr. Leland is entitled to relief from personal restraint arising from the serious infraction hearing if he can prove actual and substantial prejudice resulting from constitutional error, or that a nonconstitutional error has inherently resulted in a miscarriage of justice. *In re Pers. Restraint of Cook*, 114 Wn.2d 802, 813, 792 P.2d 506 (1990); *In re Pers. Restraint of Reismiller*, 101 Wn.2d 291, 293, 678 P.2d 323 (1984); *see also* RAP 16.4(c)(6) (petitioner's restraint unlawful if conditions or manner of restraint violate the federal or state constitution or laws of this state).

■ In a personal restraint petition challenging a prison disciplinary sanction, the decision is reviewable only if the action taken was "so arbitrary and capricious as to deny the petitioner a fundamentally fair proceeding." *Reismiller*, 101 Wn.2d at 294. The proceeding is not arbitrary and capricious if the petitioner received the minimal due process applicable to the prison disciplinary setting. *In re Pers. Restraint of Gronquist*, 138 Wn.2d 388, 396, 978 P.2d 1083, *cert. denied*, 528 U.S. 1009 (1999).

■ ■ "A prisoner's statutory right to earn good time credits is a 'protected liberty interest in those credits which prevents their deprivation absent observation of minimum due process requirements.' " *Gronquist*, 138 Wn.2d at 397 (quoting *In re Pers. Restraint of Johnston*, 109 Wn.2d 493, 497, 745 P.2d 864 (1987)). Thus, Washington prisoners are entitled to minimum due process in serious infraction hearings where sanctions include loss of good time credits. *Id.*

Minimal due process in cases involving serious infractions "means the prisoner must (1) receive notice of the [charges against him], (2) be provided an opportunity to present documentary evidence and call witnesses when not unduly hazardous to institutional safety and correctional goals, and (3) receive a written statement of the evidence relied upon and the reasons for the disciplinary action." *Id.* at 396-97 (citing *Wolff v. McDonnell*, 418 U.S. 539, 563-66, 94 S. Ct. 2963, 41 L. Ed. 2d 935 (1974)). The evidentiary requirements of due process are met if there is "some

evidence," i.e., any evidence, that the infraction occurred. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 455-56, 105 S. Ct. 2768, 86 L. Ed. 2d 356 (1985).

▇▇▇ The record provides no indication that Mr. Leland's requested officer witness statements were produced for the February 7, 2002 disciplinary hearing, or that such statements then existed. DOC does not contend to the contrary.

In *Ponte v. Real*, 471 U.S. 491, 105 S. Ct. 2192, 85 L. Ed. 2d 553 (1985), the question was whether federal due process required the prison disciplinary board to explain in any fashion why an inmate's witnesses were not allowed to testify. The Supreme Court stated:

> We think the answer to that question is that prison officials may be required to explain, in a limited manner, the reason why witnesses were not allowed to testify, but that they may do so either by making the explanation a part of the "administrative record" in the disciplinary proceeding, or by presenting testimony in court if the deprivation of a "liberty" interest is challenged because of that claimed defect in the hearing. In other words, prison officials may choose to explain their decision at the hearing, or they may choose to explain it "later."

*Ponte*, 471 U.S. at 497.

DOC does not offer an explanation for denying Mr. Leland's witness statements. Nor has DOC contended such statements would be unduly hazardous to institutional safety and correctional goals.[5] *Wolff*, 418 U.S. at 566. Thus, Mr. Leland has shown that DOC's denial of witness statements is an arbitrary and capricious violation of his due process right to present documentary evidence and call witnesses. His hearing was not fundamentally fair. *Reismiller*, 101 Wn.2d at 294.

▇▇▇ Due process also requires that the inmate receive a written statement of the evidence relied upon and reasons for the disciplinary action. *Gronquist*, 138 Wn.2d at 396-97.

---

[5] DOC instead takes the position that the February 7, 2002 hearing results are moot in any event. That is not true because no dismissal order has been entered. *See* ANALYSIS.

Mr. Leland admits to receiving the written reasons, but claims they are too conclusory to support the finding of guilt.

With respect to evidence used to reach a finding of guilt, *Krier* explained:

> "In reaching a decision on guilt or innocence of the inmate, the hearing officer must rely solely on evidence considered at the hearing." WAC 137-28-310(2). That being so, we conclude that we are bound to review a personal restraint petition challenging the sufficiency of such evidence solely on the evidence in the record of that same hearing. Unless the evidence relied upon by the hearing officer is written into the record of the disciplinary proceeding, the requirement that the inmate be given a written explanation of the evidence relied on by the hearing officer has been violated and the evidence considered cannot be reviewed effectively, administratively or judicially. The end result is that the inmate has been denied minimum due process under *Wolff*.

*Krier*, 108 Wn. App. at 45.

 With regard to evidence relied upon at the February 7 hearing, DOC stated in its October 7, 2002 second supplemental response that the hearing officer relied on the infraction report, the March 5 toxicology report indicating a positive cocaine test from the January 28 specimen collection, and Mr. Leland's admission to a drug problem. DOC contends this easily meets the "some evidence" test.

The hearing officer's written finding of guilt actually states with regard to evidence relied on: "Staff report–U.A. test was confirmed positive by testing. Inmate does not deny use of cocaine but utilized a 'Not Guilty' with past good behavior plea." DOC Second Suppl. Resp. (Oct. 7, 2002), Attach. B, Disciplinary Hr'g Mins. & Findings. The "staff report" is that of Sergeant Perkins as contained in the serious infraction report. Sergeant Perkins' report states that Officer Turner collected the sample on January 28, 2002; that the sample was tested positive for cocaine by Comprehensive Toxicology Services on February 5, 2002; and that proper procedures were followed for the collection, storage and transfer of the specimen.

This type of evidence as referred to in the staff report would typically satisfy the "some evidence" standard, assuming the inmate was allowed to present requested evidence and that such evidence did not defeat guilt. For example, the hearsay report of a prison official who did not witness an infraction can constitute "some evidence" to support the conclusion of guilt for the infraction. *See Rudd v. Sargent*, 866 F.2d 260 (8th Cir. 1989). And as argued by DOC, drug test results accompanied by an explanatory letter from a testing lab can be properly admitted over hearsay objection when the trier of fact deems the documents reliable. *State v. Anderson*, 88 Wn. App. 541, 544-45, 945 P.2d 1147 (1997).

But Mr. Leland is correct that the hearing minutes and findings literally do not state that the hearing officer considered the actual February 5 toxicology report, or whether the hearing officer simply relied on what Sergeant Perkins said in his staff report. And with regard to Sergeant Perkins' reference to Officer Turner's proper collection of the urine specimen, Mr. Leland was denied his due process right to defend against that very allegation by pursuing his claim that others had access to his specimen cup. It is central to the existence of the infraction that the toxicology lab tested a specimen actually obtained from Mr. Leland on January 28.

■■■ *Krier* holds that DOC may not use post hoc affidavits to cure evidentiary defects in the record with respect to an inmate's guilt. *Krier*, 108 Wn. App. at 43-45. When the evidence is rendered insufficient, the petitioner has proved actual and substantial prejudice and the remedy is vacation of the infraction and restoration of lost good time credits. *Id.* at 45-46. Under *Krier*, it is highly questionable whether DOC can subsequently bolster its original case against Mr. Leland by submitting officer reports as substantive evidence of compliance with collection procedures after the administrative appeal proceedings are completed.

Appended to DOC's October 7, 2002 second supplemental response as exhibit 1 is the declaration of a prison records

manager who is custodian of records kept in the ordinary course of business. The declaration provides as attachments A, B, and C with regard to the February 7 hearing, the infraction report, the disciplinary minutes and findings, and a toxicology report. The declaration specifically refers to "Attachment C" as a true, accurate, and complete copy of the "Urinalysis Report from Comprehensive Toxicology Services." But Attachment C actually reflects testing on December 27 of a specimen from Mr. Leland that tested positive for THC (tetrahydrocannabinol). Attachment C does not pertain to the January 28, 2002 collection date and February 5 positive cocaine test.

This may well be an oversight by DOC. Nevertheless, on the state of the record provided by DOC, its proof is deficient regarding the February 5 toxicology report. This furthers Mr. Leland's point that the evidence is conclusory because there is also no way to ascertain whether Sergeant Perkins even saw the toxicology report. And Mr. Leland was already denied his firsthand witness statements pertaining to Officer Turner's collection procedures as related in Sergeant Perkins' hearsay report. *See, e.g., State v. Ford,* 110 Wn.2d 827, 833, 755 P.2d 806 (1988) (ultimate concern of judiciary is that tests are competently administered and reflect accurate and reliable measure of test subject's results); *see also State v. Brokman,* 84 Wn. App. 848, 852, 930 P.2d 354 (1997) (no test occurs until a valid test occurs).

DOC's contention that Mr. Leland's admission to a drug problem is "some evidence" of the infraction is misplaced under the circumstances. Although the statement could be considered supportive or corroborative of other evidence, Mr. Leland did plead "not guilty" to the infraction. The admission is at best ambiguous in that it may pertain to circumstances unrelated to this infraction. If the other "evidence" is too conclusory to support the guilty finding, his admission to a drug problem does not ipso facto establish a positive cocaine test on January 28.

Given the unexplained evidentiary due process problems attendant to the February 7 hearing, we determine that the

hearing officer's decision and the evidence relied upon stand as too conclusory to meet the "some evidence" standard. As in *Krier*, the evidentiary deficiencies should warrant permanent vacation of the infraction and all resulting sanctions.

On the other hand, it is true that Mr. Leland has not proved that the positive cocaine sample was not his. To that extent, it can be argued that he has not ultimately shown actual and substantial prejudice and that his remedy should be limited to a vacation of the guilty finding and a rehearing. *See Reismiller*, 101 Wn.2d at 298. But Mr. Leland raised these issues in his administrative appeal. DOC could have addressed the due process problems in the DOC appeal process by ordering a new hearing (with the appropriate officer statements) under WAC 137-28-380(3). The superintendent chose not to do so and Mr. Leland was required to file a personal restraint petition.

On balance, and considering these unique facts, we grant Mr. Leland's personal restraint petition to the extent that the February 7, 2002 serious infraction ruling is vacated. We remand to DOC with the instruction that Mr. Leland's good time credits forfeited as a result of the serious infraction be restored with no new hearing. *See Krier*, 108 Wn. App. at 45-46. Furthermore, the rehearing of Mr. Leland's disciplinary infraction and all resulting sanctions are void because DOC lacked jurisdiction to summarily rehear Mr. Leland's disciplinary infraction while his personal restraint petition was pending.[6]

KURTZ and KATO, JJ., concur.

Reconsideration denied March 11, 2003.

Review denied at 149 Wn.2d 1025 (2003).

---

[6] Thus, DOC's motion to strike Mr. Leland's challenges to the results of the rehearing (*see* note 1, *supra*) is obviated and need not be addressed.