95 P.3d 330 (2004)
152 Wash.2d 155
In re the Matter of the Personal Restraint Of David HIGGINS, Petitioner.
No. 74253-7.
Supreme Court of Washington.
Argued February 26, 2004.
Decided July 22, 2004.
*331 Suzanne Lee Elliott, Seattle, for Petitioner.
Jennifer L Treadwell Karol, Carol A. Murphy, Attorney General of Washington, Olympia, for Respondent.
IRELAND, J.
In this case, we review whether the Department of Corrections (DOC) has jurisdiction to rehear an infraction while a personal restraint petition (PRP) concerning the infraction is pending in the appellate court, and whether double jeopardy principles preclude the rehearing. We hold that DOC has jurisdiction to conduct a rehearing and that DOC's rehearing of the infraction does not violate the principles of double jeopardy. Therefore, we affirm the Court of Appeals' decision.

FACTS
On July 9, 2002, prison authorities issued a serious infraction report charging petitioner, David Higgins, an inmate at Airway Heights Correction Center, with attempting to introduce marijuana into the prison facility in violation of WAC 137-28-260(infraction 603). Prison officials learned through three confidential informants that Higgins had sent $300 to Ann Allen, directing her to use the money to buy and transfer marijuana to another inmate, Shane Morris.
The hearing officer relied on the written infraction report and information given by confidential informants in finding petitioner guilty of the charge. As a result, the hearing officer deducted 270 days out of petitioner's good conduct time credit and sentenced him to 20 days of disciplinary segregation and 10 days of isolation.
In March 2003, petitioner filed a PRP in Division Two of the Court of Appeals, asking the court to overturn the infraction and restore him to his previous status. The court directed the DOC to respond to the merits of petitioner's PRP within 30 days. The DOC responded by expunging the challenged infraction and requesting the court's permission to conduct a rehearing. Petitioner filed a response objecting to the DOC's voluntary action to expunge and request for a rehearing.
On June 24, 2003, the Court of Appeals dismissed petitioner's PRP and granted the DOC permission to rehear petitioner's disciplinary infraction.
Petitioner filed a motion for discretionary review with this court, seeking review of the Court of Appeals' unpublished order dismissing his PRP and permitting the DOC to rehear his infraction. We granted review.
On August 14, 2003, the DOC reheard the infraction while the motion for discretionary review was pending in this court. The hearing officer found petitioner guilty and imposed sanctions of 130 days loss of good conduct time credit, 20 days of disciplinary segregation, and 10 days of isolation.
Subsequently, petitioner filed a motion to supplement the record with the record of the August 14 rehearing and to amend his supplemental brief to include a request that this court declare the DOC's rehearing void. The DOC did not object to the request to supplement the record but opposed the request to amend the supplemental brief.

ISSUES
(1) Should the court grant petitioner's motion to supplement the record and amend his supplemental brief?
(2) Does the DOC have the jurisdiction to expunge a prison infraction and conduct a rehearing of the infraction while the petitioner's PRP challenging the infraction is pending in the appellate court?

*332 (3) Does the DOC's rehearing of the infraction violate principles of double jeopardy?

STANDARD OF REVIEW
We review questions of law de novo. Rivett v. City of Tacoma, 123 Wash.2d 573, 578, 870 P.2d 299 (1994).

ANALYSIS

(1) Should the court grant petitioner's motion to supplement the record and amend his supplemental brief?
Petitioner seeks to supplement the record, pursuant to RAP 9.10,[1] with documents pertaining to the rehearing and the subsequent sanctions imposed by the hearing officer. Petitioner also seeks to make additional arguments by way of a supplemental brief after the initial PRP was already filed, to include a request to declare the DOC's rehearing and reimposition of sanctions void. DOC stipulates to the supplementation of the record, and we therefore grant petitioner's motion to supplement the record. DOC opposes petitioner's request to amend his supplemental brief, but provides no persuasive justification for denial. Under RAP 10.1(h), an appellate court "may in a particular case, on its own motion or on motion of a party, authorize or direct the filing of briefs on the merits other than those listed in the rule." It is appropriate to grant petitioner's motion to amend his supplemental brief pursuant to RAP 10.1(h).
Moreover, the court has inherent authority to consider issues raised in a supplemental brief when such consideration is necessary to a decision on the merits. Shoreline Cmty. Coll. Dist. No. 7 v. Employment Sec. Dep't, 120 Wash.2d 394, 402, 842 P.2d 938 (1992). Here, the issue raised in petitioner's supplemental brief is the propriety of the DOC's rehearing while petition for review is pending in this court. The issue thus goes to the heart of petitioner's case, and it is proper for the court to accept briefing.

(2) Does the DOC have jurisdiction to expunge a prison infraction and conduct a rehearing of the infraction while petitioner's PRP challenging the infraction is pending in the appellate court?
Petitioner claims the DOC lacked authority to expunge his infraction after he filed his PRP in the Court of Appeals challenging the infraction. He also argues that the DOC's rehearing violated his constitutional right to freedom from double jeopardy. The Court of Appeals has reached different conclusions over these issues. In re Pers. Restraint of Leland, 115 Wash.App. 517, 61 P.3d 357 (2003); In re Pers. Restraint of Goulsby, 120 Wash.App. 223, 84 P.3d 922 (2004).
In Leland, a DOC hearing officer found the prisoner guilty of testing positive for unauthorized drugs. The prisoner then brought a PRP seeking relief from the imposed sanctions, including lost good time credit. Leland, 115 Wash.App. at 522, 61 P.3d 357. The DOC reheard the infraction while the prisoner's PRP was still pending rather than respond to the PRP on its merits. Id. at 524-25, 61 P.3d 357. The Court of Appeals, Division Three, focused on RAP 16.3(c) and RAP 16.11(b) in concluding that "Title 16 RAP confers upon the Court of Appeals (1) original jurisdiction of personal restraint petitions, and (2) the authority to direct or order the steps necessary to decide the appropriate disposition of the petition." Id. at 527, 61 P.3d 357. In addition to RAP 16, the court relied on the principles of double jeopardy in holding that the "DOC lacks jurisdiction or authority to summarily conduct a rehearing of a personal restraint petition pending in the Court of Appeals." Id. at 529-30, 532-33, 61 P.3d 357.
Despite involving similar circumstances, the Court of Appeals, Division One, rejected the Leland reasoning. Goulsby, 120 Wash.App. at 225, 84 P.3d 922. There, the inmate, Charles Goulsby, was found guilty of arranging for controlled substance to be brought into prison. Id. Goulsby filed a PRP seeking to recover the good time credits he lost as a result of the infraction. Id. In response, the *333 DOC expunged the infraction from the record and asked the court's permission to hold a rehearing. Id. The Goulsby court disagreed with Leland primarily because the Leland court failed to consider RAP 16.4(d) in its analysis. 120 Wash.App. at 228, 84 P.3d 922. Relying on RAP 16.4(d) and the distinctions between prison disciplinary hearings and criminal prosecutions, the Goulsby court held that the DOC had jurisdiction to conduct a rehearing and that neither double jeopardy principles nor due process principles were violated by the rehearing. Id. at 228-29, 84 P.3d 922.
In the present case, the Court of Appeals, Division Two, in an unpublished order, also rejected Leland. The Higgins court specifically disagreed with the Leland court's position that double jeopardy principles applied to prison disciplinary hearings. In disagreeing with Leland, the Higgins court pointed to several federal cases that found that double jeopardy did not bar a rehearing of a prison proceeding where the evidence introduced at the initial prison hearing was insufficient.
Petitioner argues that we should adhere to Leland and reverse the Court of Appeals. He argues that DOC lacks the jurisdiction to conduct a rehearing.
The Leland court cited to RAP 16.3(c) and RAP 16.11(b). Leland, 115 Wash.App. at 526-27, 61 P.3d 357. RAP 16.3(c) provides: "[t]he Supreme Court and the Court of Appeals have original concurrent jurisdiction in personal restraint proceedings in which the death penalty has not been decreed." RAP 16.11(b) grants the chief judge the authority to determine "at the initial consideration of the petition the steps necessary to properly decide on the merits the issues raised by the petition."
While RAP 16.3(c) and 16.11(b) support the proposition that appellate courts have exclusive jurisdiction over PRPs, these two sections of RAP 16, however, do not "address relief that can be granted outside of the personal restraint procedure." Goulsby, 120 Wash.App. at 228, 84 P.3d 922. For instance, RAP 16.3(c) and RAP 16.11(b) do not preclude other governmental agencies and departments from resolving petitioners' issues through alternative forms of relief. RAP 16.4(d), which the Leland court failed to consider, states that the "appellate court will only grant relief by a personal restraint petition if other remedies which may be available to petitioner are inadequate under the circumstances. Here, the DOC's decision to expunge the record in response to petitioner's PRP and to hold a rehearing was an adequate remedy under the circumstances. We hold that a pending PRP does not operate to divest the DOC of jurisdiction or authority to conduct a rehearing of the infraction.

(3) Does the DOC's rehearing of the infraction violate principles of double jeopardy?
The double jeopardy clause of the United States Constitution states that no person shall "be subject to the same offense to be twice put in jeopardy of life or limb." U.S. Const. Amend. V. Similarly, article I, section 9 of the Washington Constitution provides that "[n]o person shall be ... twice put in jeopardy of the same offense." The federal and state double jeopardy clauses afford the same scope of protection. In re Pers. Restraint of Percer, 150 Wash.2d 41, 49, 75 P.3d 488 (2003); In re Pers. Restraint of Davis, 142 Wash.2d 165, 12 P.3d 603 (2000).
However, double jeopardy does not apply to the type of proceeding at issue in the present case. The term "`jeopardy' ... signifies the danger of conviction and punishment which the defendant in a criminal prosecution incurs when he is put on trial before a court of competent jurisdiction under an indictment sufficient in form and substance to sustain a conviction." State v. Williams, 57 Wash.2d 231, 232, 356 P.2d 99 (1960) (emphasis added).
Prison disciplinary proceedings are not criminal prosecutions or judicial proceedings but are civil and remedial in nature. Wolff v. McDonnell, 418 U.S. 539, 556, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974); State v. Williams, 57 Wash.2d at 232, 356 P.2d 99; Goulsby, 120 Wash.App. at 229, 84 P.3d 922 (citing Turner v. Johnson, 46 F.Supp.2d 655, 666-67 (S.D.Tex.1999); Gorman v. Moody, *334 710 F.Supp. 1256, 1266 (N.D.Ind.1989)). The double jeopardy clause is limited to criminal prosecutions. Thus, we hold that the DOC's rehearing of petitioner's disciplinary infraction hearing does not violate double jeopardy.
In addition to the distinction between the nature of prison and criminal proceedings, prisoners are not entitled to the same due process rights as defendants in criminal trials. See In re Pers. Restraint of Reismiller, 101 Wash.2d 291, 294, 678 P.2d 323 (1984) (citing to Dawson v. Hearing Comm., 92 Wash.2d 391, 597 P.2d 1353 (1979)). A prisoner has a protected liberty interest in earning good time credit, Leland, 115 Wash.App. at 534, 61 P.3d 357 (citing to In re Pers. Restraint of Gronquist, 138 Wash.2d 388, 397, 978 P.2d 1083 (1999)). But, as explained by the United States Supreme Court, "one cannot automatically apply procedural rules designed for free citizens in an open society, or for parolees or probationers under only limited restraints, to the very different situation presented by a disciplinary proceeding in a state prison." McDonnell, 418 U.S at 560, 94 S.Ct. 2963.
In contrast to a criminal prosecution, where the fundamental priority is to ensure due process, the fundamental priority in a prison setting is to maintain the peace. The reason for this difference is that
[p]rison disciplinary proceedings ... take place in a closed, tightly controlled environment peopled by those who have chosen to violate the criminal law and who have been lawfully incarcerated for doing so.... The reality is that disciplinary hearings and the imposition of disagreeable sanctions necessarily involve confrontations between inmates and authority and between inmates who are being disciplined and those who would charge or furnish evidence against them. Retaliation is much more than a theoretical possibility; and the basic and unavoidable task of providing reasonable personal safety for guards and inmates may be at stake, to say nothing of the impact of disciplinary confrontations and the resulting escalation of personal antagonism on the important aims of the correctional process.
Id. at 561-62, 94 S.Ct. 2963.
The fact that prisoners are accorded rights different from those given to criminal defendants does not mean that prisoners have no due process rights available to them. Rather, when prisoners are subject to discipline for serious misconduct that may deprive them of liberty interests, they still must be afforded a minimum amount of procedural safeguards. Dawson, 92 Wash.2d at 397, 597 P.2d 1353. For instance, in the present case, petitioner was entitled to notice of the alleged violation and, if relevant and not unduly hazardous, a right to call witnesses and present documentary evidence. See WAC 137-28-290(2).
However, prisoners "are not ... entitled to the full panoply of rights due a defendant in a criminal proceeding, but rather such process as is appropriate in the circumstances." In re Young, 95 Wash.2d at 220, 622 P.2d 373. For example, in the present case, petitioner's due process rights did not include the right of confrontation and cross-examination. WAC 137-28-290(3). Also, only under certain circumstances did petitioner have a right to have a staff advisor assist him in his representation. WAC 137-28-280(2)(e). Accordingly, as long as all of petitioner's minimum due process protections were observed in the second proceeding, the decision by the DOC to rehear petitioner's infraction while a PRP is still pending does not, in itself, violate the prisoner's due process rights.
Additionally, petitioner fails to cite to any authority to support his claim that the DOC is precluded from rehearing an infraction when there was insufficient evidence at the first hearing. Case law exists that is to the contrary. See Broussard v. Johnson, 253 F.3d 874, 877 (5th Cir.2001) (holding that evidence in prison proceeding was insufficient to support charge and that the Texas Department of Corrections could "provide Broussard with a new, constitutionally adequate hearing within ninety days"); Gorman v. Moody, 710 F.Supp. 1256, 1266 (N.D.Ind.1989) (holding that Indiana's conduct adjustment board's decision to rehear a prison *335 infraction was proper despite petitioner having been found not guilty in the first proceeding); Moore v. State, 481 So.2d 914, 916 (Ala.Crim.App.1985) (holding that a second administrative proceeding did not place prisoner in double jeopardy even though the disciplinary committee rendered a verdict of "not guilty" in the first proceeding).
Finally, public policy dictates a prompt correction of any errors in DOC prison proceedings. Under petitioner's argument, however, some prisoners would be deprived of timely rehearings of their lost good time credit if the DOC were required to wait until their pending PRPs were decided by the appellate courts. Consequently, these prisoners may end up staying incarcerated longer than they would have been required to had the DOC conducted an immediate rehearing.
In the present case, for example, petitioner received a prompt remedy. Upon notification of alleged violations in petitioner's first hearing, the DOC responded by expunging the record, thereby temporarily restoring petitioner's good time credit. The DOC then proceeded to hold a new hearing in hopes of rectifying any alleged errors it may have committed in the first proceeding.
Petitioner further contends that public policy does not support allowing the DOC to rehear an infraction while a PRP is pending. He asserts that the DOC has no incentive to conduct a fair proceeding if it is allowed to rehear the case every time a mistake is alleged. Petitioner argues that the DOC can continue to expunge his record and hold multiple rehearings while, at the same time, repeating the errors of the earlier proceedings. We decline to presume such bad faith in the DOC.
In the event that petitioner believes that the rehearing was still fundamentally unfair, he is not without remedy. Petitioner is free to file another PRP challenging the result of this second hearing.

CONCLUSION
We reject Leland and adopt the reasoning of Goulsby. We hold that (1) petitioner is allowed to supplement the record and to amend his supplemental brief; (2) the rules of appellate procedure do not deprive DOC of jurisdiction to conduct a rehearing, once a PRP was filed; and (3) double jeopardy principles do not preclude rehearing. Therefore, we affirm the Court of Appeals and Higgins' PRP is dismissed.
JOHNSON, MADSEN, BRIDGE, OWENS and FAIRHURST, JJ., concur.
SANDERS, J. (dissenting).
The question is whether the Department of Corrections (DOC) may unilaterally rehear a serious prison disciplinary infraction while a personal restraint petition (PRP) challenging the infraction is pending in the appellate court. While I agree with the majority that rehearing an infraction does not violate an inmate's guaranty against double jeopardy, I do not agree that DOC may unilaterally conduct such a rehearing without first being granted permission from the court.
As the majority recognizes, the extent of DOC's authority to rehear a prison infraction while a PRP challenging the infraction is pending in the appellate court was addressed in In re Personal Restraint of Leland, 115 Wash.App. 517, 61 P.3d 357, review denied, 149 Wash.2d 1025, 77 P.3d 650 (2003). Majority at 332-333. There Leland, a prison inmate, filed a PRP in the Court of Appeals challenging a prison infraction for testing positive for use of unauthorized drugs. Alleging numerous errors, Leland requested the infraction either be expunged from his record or that he receive a constitutionally adequate disciplinary hearing.
DOC responded to Leland's PRP by notifying the court that it would conduct a rehearing of the infraction. Notwithstanding DOC's response, the court directed DOC to respond to the merits of Leland's PRP. DOC nonetheless conducted a rehearing and notified the court that although some of the allegations in Leland's PRP had merit, its rehearing of the infraction rendered his PRP moot. The court disagreed, concluding the "DOC lacks jurisdiction or authority to summarily conduct a rehearing of a personal restraint petition pending in the Court of Appeals." Leland, 115 Wash.App. at 529, 61 *336 P.3d 357. The court relied primarily on the Rules of Appellate Procedure, Title 16, reasoning that once a PRP is filed in the appellate court, that court has original jurisdiction over the PRP. According to the court, DOC could not, without the court's permission, conduct a rehearing of the underlying infraction before the appellate court has either granted or dismissed the PRP. Thus, the court held the rehearing was a nullity, granted Leland's PRP, and vacated the infraction.
Leland is persuasive. Rules of Appellate Procedure 16.3 through 16.15 establish the procedure when an inmate files a PRP for the first time in the appellate court. RAP 16.1(c). In cases where the death penalty has not been decreed, the Supreme Court and Court of Appeals "have original concurrent jurisdiction" over the PRP. RAP 16.3(c). RAP 16.9 provides in relevant part:
The respondent must serve and file a response within 30 days after the petition is served, unless the time is extended by the commissioner or clerk for good cause shown, or unless the court can determine without requiring a response that the petition should be dismissed under RCW 10.73.140. The response must answer the allegations in the petition.... Respondent should also identify in the response all material disputed questions of fact.
In addition, RAP 16.11(b) grants the chief judge of the appellate court the authority to direct or order the steps necessary to decide the appropriate disposition of the petition. There is no provision in Title 16 or elsewhere suggesting DOC may rehear an infraction while a PRP challenging the infraction is pending in the appellate court.
Yet the majority rejects the sound reasoning of Leland, claiming the court failed to consider RAP 16.4(d). See majority at 333.[1] That rule provides that "[t]he appellate court will only grant relief by a personal restraint petition if other remedies which may be available to petitioner are inadequate under the circumstances." RAP 16.4(d). This begs the question whether a rehearing is an adequate remedy under the circumstances presented here. Without analysis the majority simply concludes "DOC's decision to expunge the record in response to petitioner's PRP and to hold a rehearing was an adequate remedy under the circumstances." Majority at 333. It is entirely unclear how the majority arrived at this conclusion given the fact that the remedy petitioner David Higgins requests is "overturn" the infraction, "dismiss it with prejudice," and restore his good conduct time. Pers. Restraint Pet. at 13. DOC has not once responded to the merits of Higgins's claims.
Certainly there are many circumstances where rehearing a prison infraction would be the appropriate remedy to a PRP challenging the infraction. Indeed if the exclusive remedy an inmate requests is a rehearing, DOC may assuredly decide to provide one. But where, as here, an inmate requests the infraction be expunged from his or her record and opposes DOC's attempt to rehear the infraction, the appellate court must, at some point, consider whether a rehearing would be an appropriate remedy under the circumstances.
The Rules of Appellate Procedure again provide the best guide for resolving this issue. RAP 16.9 provides, with one limited exception, that DOC must respond to a PRP within 30 days and its response "must answer the allegations in the petition." (Emphasis added.) If DOC seeks to rehear an infraction challenged by a PRP and the inmate opposes rehearing, its response must still answer the allegations in the PRP but may also include a request for permission to rehear the infraction along with reasons supporting its request. See RAP 16.9. The inmate may respond to DOC's request within 30 days. See RAP 16.10(a)(2). The chief judge may then, under RAP 16.11(b), enter orders necessary to determine the petition on *337 the merits. But without DOC's substantive response to the PRP, the chief judge cannot adequately determine whether a rehearing would be an appropriate remedy if the inmate prevailed on his or her PRP.[2]
I also question the majority's assertion that allowing DOC to unilaterally rehear a challenged prison infraction provides the inmate with a speedier remedy than he or she would otherwise receive. See majority at 335. While under certain circumstances this may be true, it presupposes that a rehearing is the proper remedy, which as discussed above is not always clear, and that the rehearing will be conducted in a legally sufficient manner. But if errors are made at the rehearing, the inmate's access to judicial review will have been substantially delayed. See, e.g., Preston v. Coughlin, 164 A.D.2d 101, 103, 562 N.Y.S.2d 867 (1990) (recognizing Department of Correctional Services' sua sponte rehearing of challenged prison infraction "impermissibly delayed" inmate's "access to the courts"). The inmate must wait until the rehearing becomes final and will then have to file a new PRP challenging the result of the rehearing. See majority at 335; see also In re Pers. Restraint of Plunkett, 57 Wash.App. 230, 232, 788 P.2d 1090 (1990) (involving inmate who filed three successive PRPs challenging three successive hearings on same prison infraction). Although I too "decline to presume... bad faith in the DOC," majority at 335, I am cognizant of the fact that this process could potentially go on for as long as DOC wished to sanction an inmate but avoid judicial review of the infraction.
I would hold DOC did not have the jurisdiction and authority to unilaterally rehear Higgins's infraction while his PRP challenging that infraction was pending in this court. To that extent, I would reach the merits of his PRP and adjudicate the matter based on the record before the court.
I therefore dissent.
ALEXANDER, C.J. and CHAMBERS, J., concur.
NOTES
[1] RAP 9.10 provides that on the motion of a party, the appellate court may direct supplementation of the record on appeal "[i]f the record is not sufficiently complete to permit a decision on the merits of the issues presented for review...."
[1] The majority also attempts to undercut Leland by asserting the court "relied on the principles of double jeopardy in holding that the `DOC lacks jurisdiction or authority to summarily conduct a rehearing of a personal restraint petition pending in the Court of Appeals.'" Majority at 332 (quoting Leland, 115 Wash.App. at 529-30, 61 P.3d 357). But the majority misreads Leland. Although Leland mentioned double jeopardy principles in its analysis, the basis for its decision was its analysis of the Rules of Appellate Procedure and its apparent concern about possible manipulation of the appellate process. See Leland, 115 Wash.App. at 526-31, 61 P.3d 357.
[2] Requiring DOC to petition the court for permission before rehearing an infraction challenged by a pending PRP provides important judicial oversight of DOC's prison disciplinary process. The need for this requirement is buttressed by the various situations where permitting a rehearing would be inappropriate. See, e.g., In re Pers. Restraint of Krier, 108 Wash.App. 31, 45, 29 P.3d 720 (2001) (granting PRP and prohibiting rehearing where petitioner established actual prejudice arising from failure to receive notice of cell confinement); see also Herring v. Gorczyk, 173 Vt. 240, 789 A.2d 955, 962 (2001) (reversing prison violation without opportunity for rehearing where alleged violation was based on confidential information and there was no independent determination of reliability).